**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward P. KNOP, Defendant-Appellant.**

**No. 82–1078.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1982.

Decided March 2, 1983.

Rehearing and Rehearing En Banc Denied May 26, 1983.

them by Section 7 of the Act."

William Schick, Arndt, Schubert, Andich, Williams & Schick, Rock Island, Ill., for defendant-appellant.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before PELL, ESCHBACH and POSNER, Circuit Judges.

PELL, Circuit Judge.

Defendant-Appellant was charged in a three-count indictment with violating 18 U.S.C. § 1014 by making false statements to federally insured banks. A jury found him guilty on all three counts.

Count one charged him with willfully overvaluing land in a financial statement submitted to the Farmers National Bank. It was charged, and the jury found, that the defendant's financial statement overvalued land he owned in Wisconsin and overstated the extent of his interest in land he owned in Iowa. Count two charged, and the jury found, that the defendant had submitted the same false statements, as alleged in count one, to the Moline Illinois National Bank. Count three charged, and the jury found, that the defendant had submitted to the Moline Illinois National Bank a list of accounts receivable containing an account that had previously been paid in full.

I

█ One of appellant's contentions is that the Government did not prove an essential element of the alleged crimes, namely that the banks in question were federally insured at the time of the commission of the alleged offenses. Appellant's contention is a challenge not only to federal jurisdiction, an essential element of which is proof of the banks' federal insurance status as of the time of the commission of the offense, but also to the sufficiency of the evidence required to prove an essential element of the charged offenses. A reversal based on insufficiency of the evidence requires entry of a judgment of acquittal; a second trial would be precluded by the Constitution's guarantee against double jeopardy. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Interjected between questions relating to identification of the defendant and the promissory notes, the following is the colloquy between appellee's counsel and the banks' officials relating to the banks' federal insurance status:

Q. Mr. Lindsey [President of Farmers National Bank], is your bank insured by the Federal Deposit Insurance Corporation?

A. Yes, it is.

Q. May I have that back, Mr. Lindsey?

A. (Handing document).

Q. Mr. Lindsey, I am going to hand you what has been marked for identification as "Government's Exhibit No. 3," and ask you would you tell us what that is.

A. It is a promissory note to Farmers National Bank by Edward P. Knop for $40,823.12.

\*  \*  \*  \*  \*  \*

[Questioning of the vice-president of the Moline National Bank].

Q. So this note was given very shortly after the defendant presented his statement, the two-page typewritten document?

A. Yes.

Q. Is either of these notes repaid?

A. No, sir.

Q. Mr. Normoyk, is your bank insured by the Federal Deposit Insurance Corporation?

A. Yes, sir.

\*  \*  \*  \*  \*  \*

In this case, as in *United States v. Safley,* 408 F.2d 603 (4th Cir.), *cert. denied* 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772 (1969), appellant "did not object that the employee[s'] testimony was irrelevant, as well it might have been if it referred only to the time of trial." *Id.* at 605. Nor did the appellant make even a passing reference in his motion for judgment of acquittal, to a claim that the banks were not insured by the Federal Deposit Insurance Corporation (FDIC) at the time of the commission of the offenses. His argument was directed only to the paucity of the Government's proof of the substantive aspects of the charged offenses. See *id.*

Taken woodenly and literally the testimony might seem to refer only to the time of the trial. In context[1] it could plausibly have been taken by the jury as referring to the time of the commission of the offenses, as the court held in *Safley,* a case which is strikingly similar to the case at bar. The Government's summation to the jury suggests that it viewed the evidence as relating to the banks' federal insurance status at the time of commission of the offenses. Counsel stated: "Well, you heard both Mr. Lindsey and Mr. Normoyk testify that their banks were insured by the Federal Deposit Insurance Corporation, the FDIC." Appellant's counsel's summation to the jury did not challenge proof of the banks' federal insurance status, but merely argued that the statements presented by the appellant to the banks were not false. Most importantly, the court instructed the jury in great detail that proof of the bank's federally insured status at the time of commission of the alleged offenses was an essential element which, as in the case of the other elements, must be proved beyond a reasonable doubt, otherwise the defendant must be found not guilty. The jury verdict obviously reflected the view of the jury that there was the proper insurance at the appropriate time. We decline to indulge in the assumption that the jury willfully failed to follow the court's instructions.

█ Where the jury returns a guilty verdict, as in this case, the Government is entitled on appeal to the benefit of all reasonable inferences from the evidence. *United States v. Garcia-Geronimo,* 663 F.2d 738, 744 (7th Cir.1981). We also note that federal law mandates that national banks be federally insured, see 12 U.S.C. § 1814(b). We believe that from the evidence, viewed in context, the jury could and did draw the reasonable inference that the banks were federally insured at the time of commission of the offenses.[2] See *United States v. Safley,* 408 F.2d at 605.

We hesitate to suggest that counsel for the defendant deliberately engaged in a "sandbagging" process. Yet we cannot ignore what a unique opportunity this situation presents. Counsel aware of the lack of pinpointing of the time to the offense could easily have objected to the question as being irrelevant because of its reference to the insurance status as of the time of the testimony. Counsel would also have been aware had he done so that the objection would have been sustained and the Government could easily have brought in the requisite proof. By saying nothing about the matter at any time at the trial level his client could easily have a built-in claim for reversal if the jury should reject his defense on the substantive merits.

The Supreme Court, in the habeas context, has spoken extensively on this subject in *Wainwright v. Sykes,* 433 U.S. 72, 89–90, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977). It is appropriate to set forth that view here:

> We think that the rule of *Fay v. Noia* [372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837], broadly stated, may encourage "sandbagging" on the part of defense lawyers, who may take their chances on a verdict of not guilty in a state trial court with the intent to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off. The refusal of federal habeas courts to honor contemporaneous-objection rules may also make state courts themselves less stringent in their enforcement. Under the rule of *Fay v. Noia,* state appellate courts know that a federal constitutional issue raised for the first time in the proceeding before

---

1. The Fourth Circuit viewed the use of "are" in relation to the insured status as not being confined to the moment of the testimony but "in the context" of the evidence as being sufficient to meet the required time proof. The reported decision does not clarify by way of example what was unusual about the "context" so as to broaden the scope of the customary present tense of "are."

2. We also recognize the evidentiary principle that proof of a condition permits the jury to reasonably infer that the condition existed earlier in time, see 2 Wigmore on Evidence 513, § 437, but do not deem it necessary to resort to this type of evidentiary extrapolation.

them may well be decided in any event by a federal *habeas* tribunal. Thus, their choice is between addressing the issue notwithstanding the petitioner's failure to timely object, or else face the prospect that the federal habeas court will decide the question without the benefit of their views.

The failure of the federal habeas courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification.

... If a criminal defendant thinks that an action of the state court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection.

Because we think the jury regarded this as well as other essential issues as having been proven beyond a reasonable doubt by the evidence, we decline to accept the appellant's *present* contention of reversible error.

Nevertheless, we also think it appropriate to recall the admonition of the Fifth Circuit that

certainly we recognize the possibility that we or our sister courts may some day be faced with an insufficiency of the evidence of insurance ... which would warrant reversal.... [T]he government treads perilously close to reversal in this case, and may soon find itself crossing the line from sufficiency to insufficiency. *United States v. Maner,* 611 F.2d 107, 111–12 (5th Cir.1980). Because proof that the banks were federally insured is crucial to the establishment of federal jurisdiction and to proving an essential element of the offense, we fail to understand why the Government should rely on indirect evidence of FDIC-insured status, when that status can easily be established directly by either a stipulation or the introduction of the pertinent certificate of federal insurance. Failure to do this in the future might require reversal of a conviction. Cf. *United States v. Platenburg,* 657 F.2d 797, 799 (5th Cir.1981).

## II

■ Appellant also contends that his Sixth Amendment right to confrontation and cross-examination was violated when the court scheduled his trial in Peoria, rather than in Rock Island, a distant location that necessitated deposing a key witness and reading his testimony in the trial record; thus he claims he was unable to have the jury observe first hand the demeanor of the key witness.

The witness was Mr. Wilbert Smet, who deeded three acres of land in Iowa to the defendant, an interest in land that, it is alleged, defendant overstated in his loan application (counts one and two). Mr. Smet is the defendant's grandfather. In 1978 Mr. Smet deeded three acres to the defendant and orally promised to devise to the defendant the remainder of his one hundred and twenty acres if the defendant provided care for the Smets and made repairs to the Smets' home. In 1979, the defendant and Mr. Smet had a disagreement over the defendant's failure to complete work on the Smets' home and to repay a loan which Mr. Smet had co-signed; consequently, Mr. Smet told the defendant that he did not want him around anymore and that he would not devise the property to him. The

jury found that the defendant did not own one hundred and twenty acres in Iowa, as claimed in the financial statements, but that he merely owned three acres.

Both the government and the defendant subpoenaed Mr. Smet. Mr. Smet's counsel informed the court that his client, who is eighty-nine years old, would be unable to appear at the trial in Peoria because of his frail physical health. The Government moved for, and was granted by the court, an order for the taking of Mr. Smet's testimony by deposition. The court's order provided for giving the defendant notice of the time and place of the deposition. Defendant and his counsel were present at the deposition, held at Mr. Smet's home, and defendant's counsel cross-examined and re-cross-examined Mr. Smet. The full record of the deposition was read to the jury at the trial.

Appellant now contends that had the court held the trial in Rock Island, as it initially intended to when it granted defendant's motion for a trial in Rock Island, Mr. Smet could have testified in court due to the close proximity of Mr. Smet's home to Rock Island. Thus appellant claims the court abused its discretion when it changed the trial location from Rock Island to Peoria. At no time, however, during the proceedings below did appellant even claim, let alone show, that Mr. Smet could in fact have testified at a trial in Rock Island. There is uncontradicted evidence in the record that Mr. Smet has suffered at least three heart attacks and has had difficulty breathing. We also note that Mr. Smet's deposition was taken at Mr. Smet's home instead of the office of the United States Attorney as was originally contemplated.

■ A defendant has no constitutional right to a trial within a certain division, as long as the trial takes place within the district in which the offense took place, as did occur in the instant case. *United States v. Young,* 618 F.2d 1281, 1288 (8th Cir.1980). Rule 18 of the Rules of Criminal Procedure authorizes a district court to take into consideration the convenience of the defendant and the witnesses as well as the prompt administration of justice. There was no abuse of discretion by the trial court in administering Rule 18.

■ Appellant contends there was a violation of his right to confrontation and cross-examination even though he was allowed to confront and cross-examine Mr. Smet at a court ordered deposition, the full record of which was admitted into evidence at the trial. While appellant claims that the deposition of Mr. Smet denied him the ability to have the jury observe Mr. Smet's demeanor, the record is clear that at no time was Mr. Smet's truth and veracity at issue during trial. Appellant's counsel never disagreed with Mr. Smet's account of the events. Appellant's counsel merely argued that the defendant need not show that he has legal title to the property claimed in the bank statements; that the expectancy created by Mr. Smet's promise, even though it was withdrawn, was sufficient to establish a legal interest in the property. We fail to see, in concrete terms, how the testimony of Mr. Smet at trial, rather than deposition, would have provided appellant with more than what he was provided for by reading the full record of the deposition, including appellant's counsel's cross and recross examination, into the record.

### III

■ Finally, appellant contends that the evidence was insufficient for the jury to find him guilty beyond a reasonable doubt. Our review is not simply a second round for the defendant to prove his version of the facts and his state of mind. "Our standard of review requires us to 'sustain the fact-finder's verdict on appeal if, viewing the evidence in light most favorable to the Government, a rational trier of fact could have found from the evidence and inferences drawn therefrom that the defendant was guilty beyond a reasonable doubt.'" *United States v. Garcia-Geronimo,* 663 F.2d at 744 (citations omitted). We might be more inclined to agree with appellant's contention if the sole issue was whether he willfully overvalued land located in Wisconsin, since the evidence was limited to the conflicting testimony of the tax assessor and appellant showing their respective valuations. However, the totality of the evi-

dence, especially the legal interest asserted by the appellant in land located in Iowa, supports the jury's determination of appellant's guilt beyond a reasonable doubt.

## IV

For the foregoing reasons, the district court's judgment is affirmed.

POSNER, Circuit Judge, dissenting.

The statute under which the defendant was charged, 18 U.S.C. § 1014, might have been so worded as to punish the making of false statements to a national bank whether or not insured, cf. 18 U.S.C. § 2113(f), but was not. It requires that the bank be federally insured at the time the statements are made to it. This is an element of the offense and must be proved beyond a reasonable doubt.

The record contains no direct evidence that either of the two banks to which the appellant is alleged to have made false statements was federally insured in May 1979 when the statements were made. On November 23, 1981, the first day of the trial, the prosecutor asked an officer of each bank, in passing, "is your bank insured by the Federal Deposit Insurance Corporation?" One answered "yes it is," the other "yes, sir." Neither was asked whether his bank had been insured back in May 1979, and no certificate of insurance was put into evidence.

Although it is likely that the banks were federally insured in May 1979, this was not proved beyond a reasonable doubt. The government in its brief asked us to take judicial notice that the banks were insured but did not tell us what facts establishing insured status we should take judicial notice of. It is true that the banks are, and on the date of the alleged false statements were, national banks, and as such required to be federally insured, see 12 U.S.C. §§ 1814(b), 1818, and I am willing to assume that national banks are generally law abiding. But one cannot infer—at least with the confidence required in a criminal case— from the fact that someone is required by law to do something that he has done it; 12 C.F.R. § 303.7, which specifies procedures by which a bank that has lost insured status can regain it, implies—what is anyway obvious—that deposit insurance can lapse.

In *United States v. Platenburg,* 657 F.2d 797, 799 (5th Cir.1981), the only evidence of insured status was a certificate of insurance dated seven years before the events in question, and the court held this was not enough. Although *Platenburg* is distinguishable on its facts because the bank involved there was not a national bank, the evidence of insured status is no stronger in this case, limited as it is to testimony that the bank was insured at the time of trial— two and a half years after the alleged offense.

No case has upheld conviction under 18 U.S.C. § 1014 on evidence of insured status as weak as in this case, unless it is *United States v. Thompson,* 421 F.2d 373, 379 (5th Cir.1970), which, even if one ignores the fact that it was vacated by the Supreme Court for reasons that are unclear, see 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 117 (1970) (per curiam), is of doubtful authority after *Platenburg.* In *Gorman v. United States,* 380 F.2d 158, 165 (1st Cir.1967), there was testimony of insured status both before and after the alleged criminal act. In *United States v. Jackson,* 430 F.2d 1113, 1115–16 (9th Cir.1970), the certificate, bearing a date before the robbery, was put in evidence, accompanied by testimony that the certificate is good "until the insurance is cancelled," implying that the insurance had not been cancelled at the time of the robbery. Finally, in *United States v. Safley,* 408 F.2d 603, 605 (4th Cir.1969), the case factually most like this one, the court held that the context permitted the jury to infer that the bank officers who testified that "the deposits are" insured were referring to the time of the offense rather than the time of trial, despite the tense; there is no basis for such an inference here. And it adds nothing to the government's case that defense counsel could have helped the government by objecting to the relevance of asking the bank officers whether their banks were insured at the time of trial; counsel was not obliged to help the government convict his client.

My brethren must share some of my misgivings about the sufficiency of the evi-

dence that the banks were insured at the time of the alleged offense, because they say that unless the government shapes up, they may direct acquittal in a future case. But either the government proved every element of the offense beyond a reasonable doubt or it did not. If it did not, we must reverse; if it did, it is no business of ours that it could have put on an even stronger case.

If the government needed a warning, it got it three years ago in *United States v. Maner*, 611 F.2d 107, 112 (5th Cir.1980) ("the Government treads perilously close to reversal in this case, and may soon find itself crossing the line from sufficiency to insufficiency .... [T]his is a nationwide plague infecting United States Attorneys throughout the land"). The warning was not heeded, and acquittal was directed in *Platenburg*—two years ago. I would have thought the Justice Department would keep its attorneys in Illinois abreast of rulings in other circuits. That is not our function. I would reverse.

I join in Parts II and III of the court's opinion.