**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Regan DARRELL,
Defendant-Appellant.**

No. 86–2113.

United States Court of Appeals,
Tenth Circuit.

Sept. 4, 1987.

---

Frederick L. Boss, Jr., Tulsa, Okl., for defendant-appellant James Regan Darrell.

Layn R. Phillips, U.S. Atty., Keith Ward, Asst. U.S. Atty., Tulsa, Okl., for plaintiff-appellee.

Before McKAY, LOGAN, and ANDERSON, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 34.1.8(c) and 27.-1.2. The cause is therefore ordered submitted without oral argument.

Defendant, James Regan Darrell, appeals his conviction on two counts of using a false social security number, in violation of 42 U.S.C. § 408(g)(2), six counts of making false statements for the purpose of influencing banks insured by the Federal Deposit Insurance Corporation (FDIC), violations of 18 U.S.C. § 1014, and one count of interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314.

After representing himself pro se at trial, defendant, through counsel, now makes several contentions on appeal: (1) the charging language of counts II and III of the indictment does not state offenses under 42 U.S.C. § 408(g)(2); (2) the evidence is insufficient to support a guilty verdict on counts II and III; (3) the government presented insufficient evidence of the banks' insured status to support defendant's convictions on counts IV through IX under 18 U.S.C. § 1014; (4) the government did not satisfy the "stolen" element necessary for a conviction on count X under 18 U.S.C. § 2314; (5) the court prejudiced defendant by not allowing him to cross-examine two government witnesses; and (6) the court denied defendant a fair trial by refusing to indict him under the name of Adam Wayne Sterling. We rule against defendant on each of these issues and affirm his convictions.

## I

### A

■ Defendant argues that the charging language of counts II and III in the indict-

ment does not state an offense under 42 U.S.C. § 408(g)(2). Count II charged that defendant used a false social security number with intent to deceive in securing a bank loan.[1] Count III charged that defendant used a false social security number to conceal his identity from law enforcement officials in Tulsa.[2] Section 408(g)(2), in relevant part, provides as follows:

"Whoever—

(g) ... for the purpose of obtaining anything of value from any person, or for any other purpose—

.     .     .     .     .

(2) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person ...

shall be guilty of a felony...."[3]

Although no reported decision has discussed the elements of a 42 U.S.C.

---

1. Count II provides:

"On or about June 22, 1984, in the Northern District of Oklahoma, JAMES REGAN DARRELL, defendant herein, for the purpose of obtaining a loan at the Bank of Oklahoma, City Plaza Branch, Tulsa, Oklahoma, under another identity, with intent to deceive, falsely represented, and caused to be represented, that number 424–64–7250, was the social security account number assigned by the Secretary of Health and Human Services of the United States to him, when in fact, as the defendant well knew, such number was not the social security account number assigned by the Secretary to the defendant, in violation of Title 42, United States Code, Section 408(g)(2), and Title 18, United States Code, Section 2."

I R. Tab 1 at 2.

2. Count III provides:

"On or about November 5, 1984, in the Northern District of Oklahoma, JAMES REGAN DARRELL, defendant herein, for the purpose of concealing his true identity from law enforcement officials in Tulsa County, Oklahoma, with intent to deceive, falsely represented that number 424–66–8255 was the social security account number signed [sic] by the Secretary of Health and Human Services of the United States to him, when in fact, as the defendant well knew, such number was

not the social security account number assigned by the Secretary to the defendant, in violation of Title 42, United States Code, Section 408(g)(2)."

1 R. Tab 1 at 3.

3. The legislative history of the provisions demonstrates that Congress intended to extend criminal liability for false use of a social security number beyond the false use of a number to obtain or increase benefits under the Social Security Act, of which it is part. *See* S.Rep. No. 938, 94th Cong., 2d Sess., pt. II, at 490, *reprinted in* 1976 U.S.Code Cong. & Admin. News 2897, 4030, 4194 ("The Senate amendment ... makes a misdemeanor the willful, knowing and deceitful use of a social security number for any purpose.").

In 1981, Congress amended the section, changing the offense from a misdemeanor to a felony and adding the language "or for the purpose of obtaining anything of value from any person" before "or for any other purpose." Pub.L. No. 97–123, 95 Stat. 1659, 1663–64. While the House Conference Report accompanying the amendment offers no explanation of the reasons for the change, H.R.Conf.Rep. No. 409, 97th Cong., 1st Sess. 15–16, *reprinted in* 1981 U.S. Code Cong. & Admin.News 2681, 2687–88, the text of the amendment makes clear Congress' intent both to punish a broader range of acts and to impose a stiffer penalty.

§ 408(g)(2) violation, those elements are not difficult to perceive. The government must allege and prove that defendant (1) for any purpose, (2) with intent to deceive, (3) represented a particular social security account number to be his or another person's, (4) which representation was false.

■ An indictment, to be sufficient, must comprise "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). This standard embodies the two-part test this court has used to review the sufficiency of an indictment:

"First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause."

*United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). An indictment that sets forth the words of the statute generally is sufficient so long as the statute itself adequately states the elements of the offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985). Counts II and III, which follow the statutory language of § 408(g)(2), meet the test for sufficiency of an indictment.

**B**

Defendant contends that even if counts II and III of the indictment charged him with a crime, the trial court nonetheless erred in denying his motion for a directed verdict of acquittal on the ground of insufficiency of evidence. This contention also lacks merit.

In reviewing the denial of defendant's motion, we must view the evidence and reasonable inferences to be drawn from it in the light most favorable to the government to decide whether there was sufficient evidence from which the jury could find the defendant guilty beyond a reasonable doubt. *E.g., United States v. Alonso*, 790 F.2d 1489, 1492–93 (10th Cir.1986). In deciding whether the evidence is sufficient under this standard, we may neither weigh conflicting evidence nor consider the credibility of witnesses. *United States v. Hines*, 696 F.2d 722, 730 (10th Cir.1982). By this standard, the evidence was clearly sufficient to convict defendant on both counts.

■ Under count II, the evidence showed defendant's purpose to obtain something of value, a loan from the Bank of Oklahoma. He met with a bank officer in June 1984 and presented financial documents in order to obtain funds. At this meeting, defendant falsely represented his name and his social security number, and that he both possessed a net worth of $903,000 and operated a business with a net worth of $153,000. Defendant used social security number 424–64–7250 in his representations to the Bank of Oklahoma; records of the Department of Health and Human Services (HHS) and the U.S. Treasury Department showed that this social security number was not defendant's. The misrepresentation of the number was relevant to the intent to deceive because it helped conceal defendant's true identity and frustrated the bank's investigation of defendant's credit rating.

■ Sufficient evidence likewise supports count III. Deputy sheriff Moody's testimony and arrest report demonstrate that defendant gave police a false name, Guy Sterling, and a false social security number, 424–66–8255. Testimony and records provided by HHS and the Treasury Department show that this social security

In addition, the Fourth Circuit has squarely held that § 408(g)(2) applies to private, purely commercial transactions. *United States v. Bales*, 813 F.2d 1289, 1297 (4th Cir.1987) (affirming convictions for using false social security number in seeking bank loans). *See also United States v. Rosenberg*, 806 F.2d 1169, 1171–72 & n. 1, 1180 (3d Cir.1986) (use of false social security number in commercial transaction).

number was not assigned to defendant. This deception helped conceal defendant's identity and hindered the police department's discovery of outstanding warrants for his arrest.

## II

■ Counts IV through IX allege that defendant on six separate occasions made material false statements in loan applications to defraud Federal Deposit Insurance Corporation (FDIC)-insured Oklahoma banks in violation of 18 U.S.C. § 1014. The evidence showed that defendant used false names—Guy Sterling in his dealings with the Bank of Oklahoma, the Bank of Tulsa, and Harvard Bank; A.W. Sterling in his application to the Woodland Bank—and misrepresented other information in his loan applications. Defendant's principal contention concerning these counts is that the government did not adequately prove the banks' insured status through the FDIC. Proof of FDIC–insured status as of the date of the crime is a necessary element of the § 1014 offenses, which the government must prove beyond a reasonable doubt. *United States v. Bolt*, 776 F.2d 1463, 1471 (10th Cir.1985).

Several appellate courts have addressed the quantum of proof acceptable to prove the federally-insured status of a bank. *See United States v. Maner*, 611 F.2d 107, 111 n. 1 (5th Cir.1980) (citing cases and evidence relied upon). A certificate of insurance alone does not adequately establish that the financial institution is FDIC–insured *on the date* the charged offense occurred. *United States v. Shively*, 715 F.2d 260, 265 (7th Cir.1983); *United States v. Platenburg*, 657 F.2d 797, 799–800 (5th Cir. 1981). A variety of other evidence, however, supporting the bank's insured status at the time of the offense, presented with or without the certificate, will satisfy the proof requirements.

In *Bolt*, we found sufficient the bank's FDIC certificate, an expense check paying the bank's insurance premium for a period

including the date of the crime, and testimony of the bank's vice president that the bank was insured. 776 F.2d at 1471. In *United States v. Skiba*, 271 F.2d 644 (7th Cir.1959), *cert. denied*, 362 U.S. 924, 80 S.Ct. 678, 4 L.Ed.2d 743 (1960), presentation of the bank's certificate of insurance and testimony of the bank's cashier that the bank was operating under this certificate were held to be sufficient proof. *Id.* at 645–46. In *United States v. Knop*, 701 F.2d 670 (7th Cir.1983), the court, while admitting it was a close question, found testimony by national bank officers that the bank was insured, together with federal law requiring national banks to be insured, sufficient for the jury to infer insured status beyond a reasonable doubt. *Id.* at 672–74. *See also United States v. McIntosh*, 463 F.2d 250 (3d Cir.1972) (per curiam) (unchallenged testimony by bank's assistant vice-president that he was custodian of bank's charter and that on date of robbery the bank was insured held sufficient); *United States v. Phillips*, 606 F.2d 884, 887 (9th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980) ("uncontradicted testimony of a ranking official of the institution is sufficient to establish that the institution is federally insured").

■ In the instant case, in addition to presenting authenticated certificates of insurance for the Bank of Oklahoma, Harvard Bank, the Bank of Tulsa, and Woodland Bank, the government introduced notarized sealed documents attesting that such insurance had not lapsed. These documents, one for each bank, were signed by the record custodian for the FDIC and certified that "after diligent search no record or entry in the official records of the Federal Deposit Insurance is found to exist which terminated the status of [named bank] as an insured bank under the provisions of Section 8(a) of the Federal Deposit Insurance Act, as amended (12 U.S.C. 1818(a))...." VI R.Pl.Ex. 1(A), 1(C), 1(D).[4] This evidence is sufficient to prove the

---

**4.** The document concerning Harvard Bank, Pl.Ex. 1(B), uses slightly different language but

conveys the same message.

element of insured status.[5] Defendant's argument therefore fails.

## III

Finally, count X of the indictment alleged that defendant transported stolen goods in interstate commerce, from Tulsa to Plano, Texas, in violation of the National Stolen Property Act, 18 U.S.C. § 2314.[6] Evidence showed that in August 1984, defendant, using the name Guy Sterling, contracted to purchase Robert D. Lawrence's Tulsa home and the furniture then in the house. Several months after the bank dishonored the sight drafts which defendant had given as earnest money for these purchases, Lawrence inspected the house and discovered the furniture missing. Lawrence had received no payment for the furniture or the house and had not given defendant permission to remove the furniture. Lawrence did not learn the whereabouts of the furniture until August 1985, when defendant's wife called Lawrence from Plano, Texas to tell him that her husband had been arrested, that she had just discovered he had stolen the furniture, and that she wanted to return it to Lawrence. Lawrence personally recovered the furniture.

Defendant asserts that he has not violated 18 U.S.C. § 2314; relying upon the Oklahoma larceny statute and case law,[7] defendant argues that the property he transported was not "stolen."

Defendant was convicted under a federal, not an Oklahoma criminal statute. Federal cases have given the word "stolen" under § 2314 and other federal statutes a broader meaning than common law larceny or larceny as used in the Oklahoma statute. In the leading case, *United States v. Tur-*

*ley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), the Supreme Court construed the term "stolen" in the National Motor Vehicle Theft (Dyer) Act, 18 U.S.C. § 2312. The Court held that the meaning of the federal statute should not depend on state law definitions of larceny. *Id.* at 411, 77 S.Ct. at 399. It noted that "stolen" had no common law meaning and held that the term included "all felonious takings ... with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *Id.* at 417, 77 S.Ct. at 402. "Felonious" means "in the sense of having criminal intent rather than with reference to any distinction between felonies and misdemeanors." *Id.* at 410 n. 4, 77 S.Ct. at 399 n. 4. Because Congress intended the statute at issue here, 18 U.S.C. § 2314, to "extend the provisions of the National Motor Vehicle Theft Act to other stolen property," 48 Stat. 794 (1934), "stolen" should be construed as in *Turley*. *See also Bell v. United States*, 462 U.S. 356, 362, 103 S.Ct. 2398, 2402, 76 L.Ed.2d 638 (1983) (in construing 18 U.S.C. § 2113(b), the language "takes and carries away, with intent to steal or purloin" is broader than common law larceny).

Other circuits concur with this approach. In *United States v. Handler*, 142 F.2d 351 (2d Cir.), *cert. denied*, 323 U.S. 741, 65 S.Ct. 40, 89 L.Ed. 594 (1944), defendant obtained bonds from a woman by falsely representing to her that he worked in a bank and would sell them for her. He later sold the bonds for his own gain. On appeal from his conviction, the Second Circuit rejected his argument that the federal statute incorporated state law concepts of "felonious." *Id.* at 354. The defendant also argued that he could not be guilty of com-

---

5. For three of the four banks, the government presented additional evidence, in the form of testimony by bank officials, that the FDIC insured the banks during the time defendant defrauded them.

6. In relevant part, 18 U.S.C. § 2314 provides: "Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen,

converted or taken by fraud ... Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

7. The Oklahoma larceny statute defines larceny as "the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof." Okla.Stat.Ann. tit. 21, § 1701. This intent must exist at the time the property is taken. *Simmons v. State*, 549 P.2d 111, 116 (Okla.Crim.App.1976).

mon law larceny, which, he claimed, was encompassed by the statutory language "steal or purloin," because at the moment of the theft he lacked the intent permanently to deprive his victim of the bonds. Quoting the Fifth Circuit, the court squarely rejected this argument:

" 'Stealing, having no common law definition to restrict its meaning as an offense, is commonly used to denote any dishonest transaction whereby one person obtains that which rightfully belongs to another, and deprives the owner of the rights and benefits of ownership, but may or may not involve the element of stealth usually attributed to the word purloin.' "

142 F.2d at 353 (quoting *Crabb v. Zerbst*, 99 F.2d 562, 565 (5th Cir.1938)). *See also United States v. Long Cove Seafood, Inc.*, 582 F.2d 159, 163 (2d Cir.1978) (definition of "stolen" in § 2314 abolishes archaic common law distinctions). *Cf. United States v. Rogers*, 786 F.2d 1000, 1003 (10th Cir.1986) (§ 2314 not violated when owner of airplane upon which U.S. Customs Service places seal enters airplane to remove property; while statute clearly defines "to steal" more broadly than common law larceny, it does not punish "stealing" one's own property).

■ Further, the evidence was sufficient to support a guilty verdict for the charge of transporting stolen property. The prosecutor presented evidence that defendant gave worthless sight drafts as a down payment for a house and furniture; that he falsely represented his name and that he was an attorney; and that he removed the furniture from Oklahoma to Plano, Texas without disclosing his intent to leave or receiving permission to take the furniture. This evidence is sufficient to permit an inference that defendant took "with intent to deprive the owner of the rights and benefits of ownership," *Turley*, 352 U.S. at 417, 77 S.Ct. at 402; that he may not have done so "by stealth" does not defeat the conviction.

IV

Defendant next argues that the district court denied him the right to cross-examine two of the government's witnesses. The right of a defendant in a criminal case to cross-examine witnesses is well established. *Alford v. United States*, 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931).

The record, however, shows that the trial court did not deny defendant any opportunity to cross-examine these witnesses. Rather, through inadvertence or strategy, defendant simply failed to use the opportunity given him. On the first day of trial, when the witnesses testified, defendant requested the court's permission for an early recess. To accommodate this request, the trial court reserved cross-examination of two of the prosecution's witnesses for another day, stating, "We will keep you [witness] on call then for tomorrow for cross-examination.... That means that Mr. Darrell will have the right to cross-examine this witness at a later time." II R. 64. *See also id.* at 105. Defendant, however, failed to ask the court to recall the witnesses.

By this failure, defendant waived his right to cross-examine the witnesses. *See United States v. Cook*, 530 F.2d 145, 153 (7th Cir.), *cert. denied*, 426 U.S. 909, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976) (defendant waived right to cross-examine prosecution witness by failing to request the district court to allow him to do so); *Blackwell v. United States*, 405 F.2d 625, 626 (5th Cir.), *cert. denied*, 395 U.S. 962, 89 S.Ct. 2104, 23 L.Ed.2d 747 (1969) (court requested witness, whose testimony added nothing to the case, to step down, and defense counsel did not object or seek to cross-examine; "[t]he action of counsel in failing to cross-examine was nothing more than trial strategy and amounts to a waiver of the right").

V

Defendant's final argument is that the entire indictment and subsequent trial were faulty because they charged him in the name of James Regan Darrell, rather than in the name of Adam W. Sterling. Defendant argues that he had changed his name to Sterling, and that the government should have proceeded against him in that

name. This argument fails both as a matter of law and of fact.

As a matter of law, Oklahoma, where defendant resided during and after the time he committed the crimes, has an exclusive statutory procedure for name changes. Okla.Stat.Ann. tit. 12, §§ 1631–1640 provides that a person may change his name—other than by marriage, divorce or adoption—only by bringing a civil action for that purpose. *See Sneed v. Sneed*, 585 P.2d 1363, 1365 (Okla.1978).

As a matter of fact, defendant presented no evidence that he had brought any statutory proceeding for changing his name, and the government produced substantial evidence to the contrary. A government witness testified that the public records of Kay and Tulsa Counties, where defendant had lived, contained no record of any name change by defendant. In addition, after the grand jury indicted defendant he continued to use the name Darrell, rather than Sterling. In November 1985, he applied for a job with Rooney Company under the name of J.R. Darrell; in October 1985, he arranged for a doctor's appointment as J.R. or James R. Darrell; his current phone bill at the time of trial was addressed to him as Darrell. Thus, the jury could properly find that defendant's name was and remained James R. Darrell.

AFFIRMED.