UNITED STATES of America, Plaintiff–Appellee,

v.

Michael LOCKLEAR, Defendant–Appellant.

No. 95–3320.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1996.

Decided Oct. 2, 1996.

Lisa T. Warwick, Stephen Ingraham (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Kathleen T. Zellner, Daniel E. DeLay (argued), Zellner & Associates, Naperville, IL, for Defendant–Appellant.

Christopher T. VanWagner, Madison, WI, Amicus Curiae.

Before CUDAHY, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Michael Locklear was convicted on eight counts of aiding and abetting the uttering of counterfeit cashier's checks purportedly issued by M & I Marshall & Isley Bank ("M & I Bank") knowing that the checks were counterfeit. See 18 U.S.C. §§ 493, 2. However, the indictment did not allege one element of section 493: that M & I Bank was a financial institution "authorized and acting under the laws of the United States." The government also failed to prove that the Bank had such a status. The government now confesses error. For the reasons that follow, we reverse the judgment of the district court and remand the case with directions to enter a judgment of acquittal.

# I

## BACKGROUND

On March 30, 1995, a superseding indictment was returned against Mr. Locklear, charging him with eight counts of aiding and abetting the uttering of counterfeit cashier's checks between January 28 and March 10, 1994.[1] Mr. Locklear went to trial June 5 through 7, 1995. Testifying for the government pursuant to a plea agreement was Eugene Caldwell, the man who had collaborated with Mr. Locklear on the plan to pass counterfeit checks. According to Caldwell's testimony, Mr. Locklear drove Caldwell to a selected retail store; Caldwell then bought a store item with the counterfeit check, which was written for more than the value of the item; and the two men split the change. The defendant and Caldwell (and others who became involved in the scheme) passed eight counterfeit cashier's checks, purportedly drawn on M & I Bank, to local merchants for merchandise (a mountain bike and a puppy, for example) and change. They were apprehended after a suspicious Sears employee followed Caldwell out of the store, recorded Mr. Locklear's license plate number, and notified law enforcement authorities.

At the close of the government's case, Mr. Locklear's counsel moved for dismissal of the indictment on the ground that there was insufficient evidence. The court denied the motion on the ground that the government had presented evidence on each element of each charge. After Mr. Locklear presented one witness (Mr. Locklear's wife) and rested, his counsel again moved for dismissal of the indictment for insufficient evidence. The district court denied that motion as well. The jury then convicted Mr. Locklear on all counts.[2]

At the sentencing hearing, Mr. Locklear himself challenged the indictment's failure to allege that M & I Bank was a federally insured bank at the time he allegedly aided and abetted the passing of the checks. The court reread the indictment and again denied Mr. Locklear's motion. The court then imposed a sentence of forty-six months of imprisonment for each of the eight counts of the indictment, to run concurrently, and restitution of $27,280.

Mr. Locklear filed a timely notice of appeal.[3] At oral argument, we appointed an

---

1. Mr. Locklear filed a pretrial motion to dismiss the indictment, but his motion was based on allegations of prosecutorial misconduct rather than on the failure of the government to allege an essential element of the offense in the indictment. The motion was denied. See R.36, 46, 47, 58.

2. The jury instruction listing the elements of the offense did not include the statutory language requiring that the bank be "authorized or acting

under the laws of the United States." 18 U.S.C. § 493. Mr. Locklear did not object to the instruction.

3. Mr. Locklear's court-appointed appellate counsel had filed a motion to withdraw. In reply to the motion, Mr. Locklear contended that, although the claim was not raised by counsel, the indictment did not charge an essential element of the crime. The motion to withdraw was denied on May 13, 1996. The case was argued on May

amicus curiae to argue the proposition that the government neither alleged nor proved that the instrument described in the indictment had been issued by any of the institutions mentioned in 18 U.S.C. § 493. The amicus curiae submitted that the defendant must be acquitted, given the complete failure of proof that M & I Bank was "authorized or acting under the laws of the United States" and thus that M & I Bank's instruments are within 18 U.S.C. § 493. The government agreed and requested that we vacate the sentence imposed on Mr. Locklear and remand the case to the district court with instructions that it enter a verdict of acquittal or a dismissal of each count with prejudice.[4]

## II

## DISCUSSION

### A.

■ There is no question that the indictment in this case did not allege that M & I Bank had the federally protected status set forth in the statute. We must decide whether the federally protected status of M & I Bank is an essential element of the charged offense. The government has confessed error on this point and asks that we direct the district court to enter a judgment of acquittal. "Confessions of error [on the part of the government] are, of course, entitled to and given great weight, but they do not 'relieve this Court of the performance of the judicial function.'" *Sibron v. New York*, 392 U.S. 40, 58, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968) (quoting *Young v. United States*, 315 U.S.

20, 1996. We appointed amicus curiae Christopher T. VanWagner at that time to argue the insufficiency of the indictment because it was not an issue argued on appeal by appellate counsel.

4. The government's motion to vacate and remand states:

The government concurs with the amicus curiae that the superseding indictment did not allege, nor was the jury instructed, nor was any evidence at trial offered to prove that "M & I Marshall and Isley Bank" was included in the class of federally protected institutions mentioned in 18 U.S.C. § 493.

Thus, it appears that the government failed to prove an essential element of the offense

257, 258, 62 S.Ct. 510, 511, 86 L.Ed. 832 (1942)). Therefore, we have a duty to evaluate independently the merits of the case. *See United States v. Gonzalez,* 93 F.3d 311, 320 (7th Cir.1996).

Mr. Locklear's conviction is based on a violation of 18 U.S.C. § 493, which provides:

§ 493. **Bonds and obligations of certain lending agencies**

Whoever falsely makes, forges, counterfeits or alters any note, bond, debenture, coupon, obligation, instrument, or writing in imitation or purporting to be in imitation of, a note, bond, debenture, coupon, obligation, instrument or writing, issued by the Reconstruction Finance Corporation, Federal Deposit Insurance Corporation, ... or any land bank, intermediate credit bank, insured credit union, ... authorized or acting under the laws of the United States, shall be fined under this title or imprisoned not more than five years, or both.

Whoever passes, utters, or publishes, or attempts to pass, utter or publish any note, ... instrument or document knowing the same to have been falsely made, forged, counterfeited or altered, contrary to the provisions of this section, shall be fined under this title or imprisoned not more than five years, or both.

Although this statute has been the subject of very little litigation, it is important to note that it is one of several contained in Title 18 of the United States Code that afford protection to certain federally chartered or insured banks through the imposition of federal criminal sanctions.[5]

and the jury was not instructed as to this essential element.
Government's Motion of July 19, 1996, at 3.

5. *See United States v. Moede,* 48 F.3d 238, 241 & n. 3 (7th Cir.1995) (discussing predecessor to current version of the federal bank fraud statute that covered "a federally chartered or insured financial institution"); *see also United States v. Briggs,* 939 F.2d 222, 224–25 (5th Cir.1991) (same); *cf. Williams v. United States,* 458 U.S. 279, 305, 102 S.Ct. 3088, 3102, 73 L.Ed.2d 767 (1982) (Marshall, J., dissenting) (noting that "Congress has provided comprehensive criminal sanctions to protect federally insured institutions" and listing, as examples, 18 U.S.C. §§ 212, 213 (loans or gratuities offered to bank examin-

■ In general terms, an indictment is sufficient if it "first, contains the elements of the charged offense and fairly informs a defendant of the charge against him which he must defend, and second, enables him to plead double jeopardy as a bar to a future prosecution." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *see United States v. Allender,* 62 F.3d 909, 914 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 781, 133 L.Ed.2d 732 (1996). An indictment that uses the language of the statute when setting forth the offense is usually sufficient "as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense." *Allender,* 62 F.3d at 914 (citing *United States v. Hinkle,* 637 F.2d 1154, 1157 (7th Cir.1981)).

■ The statute before us, by its terms, imposes sanctions upon an individual who utters a counterfeit instrument of any lending institution "authorized or acting under the laws of the United States." Thus, an essential element of an offense under section 493 is that the counterfeit instrument be issued by a named federal agency or an institution "authorized or acting under the laws of the United States." There is no allegation in the indictment that the counterfeit instruments uttered by Mr. Locklear were instruments issued by a federally insured financial institution "authorized or acting under the laws of United States" at the time of commission of the offense. The indictment is clearly insufficient.

The cases dealing with similar federal bank-related crimes recognize that the federally chartered or insured status of the institution is an essential element of the offense, one that must be established by the government. For instance, our colleague, Judge Kanne, writing for the court in *United States v. Ross,* 77 F.3d 1525 (7th Cir.1996), noted that "this court has held that the government must prove [under U.S.C. § 1014] ... that the bank was federally insured at the time the false statement was made." Similarly,

the judges of the Eleventh Circuit held in *United States v. Key,* 76 F.3d 350, 353 (11th Cir.1996) (per curiam) that "[p]roof of federally-insured status of the affected institution is, for both [18 U.S.C.] § 1344 [bank fraud upon a federally insured bank] and § 1014 [false statements to a federally insured bank], a jurisdictional prerequisite as well as an element of the substantive crime." The importance of this "federal nexus" requirement also was emphasized by Judge Hall, writing for the Ninth Circuit, in *United States v. Lewis,* 67 F.3d 225, 230 (9th Cir. 1995). In that case, the court was called upon to construe the earlier version of 18 U.S.C. § 1344 that protected "a federally chartered ... financial institution" which was defined by the statute to include "a bank ... or other financial institution organized or operating under the laws of the United States." The court construed this latter language as expressive of the strong federal interest in the financial integrity of banks that are federally chartered or insured.

■ The government agrees with the amicus that the federally protected status of the bank was an essential element of the offense. It also admits that it offered no evidence that the bank enjoyed a federally protected status. Proof of that element was essential to federal jurisdiction over the criminal activity at issue in the case. That jurisdictional prerequisite "is measured as a challenge to the sufficiency of the evidence." *Key,* 76 F.3d at 353; *accord United States v. Moede,* 48 F.3d 238, 241 (7th Cir.1995) (reviewing § 1344); *United States v. Schultz,* 17 F.3d 723, 725 (5th Cir.1994) (reviewing §§ 1014 and 1344); *United States v. Stoddard,* 875 F.2d 1233, 1236, 1238 (6th Cir.1989) (reviewing § 656, misapplication of FDIC-insured bank funds); *United States v. Mentz,* 840 F.2d 315, 318 (6th Cir.1988) (reviewing § 2113(a), bank robbery); *United States v. Knop,* 701 F.2d 670, 672 (7th Cir.1983) (reviewing § 1014). Therefore, the government not only failed to allege but also failed to prove an essential element of section 493, the offense of conviction. "A reversal based on insufficiency of the evidence requires entry

ers by bank officials; acceptance of same by examiners); 18 U.S.C. § 493 (forging, counterfeiting, or passing bonds and obligations); 18 U.S.C. § 656 (theft from banks by bank examin-

ers); 18 U.S.C. § 709 (1976 ed. and Supp. IV) (false advertising that bank deposits are insured by Federal Deposit Insurance Corporation)).

of a judgment of acquittal." *Knop,* 701 F.2d at 672.[6] Just as the courts have reversed convictions wrongly obtained under similar bank-related statutes due to the government's failure to prove that the financial institution at issue was federally protected, we now must reverse the conviction against Mr. Locklear. *See, e.g., United States v. Schultz,* 17 F.3d 723 (5th Cir.1994) (reversing convictions under 18 U.S.C. §§ 1014, 1344 for failure to prove bank's insured status and failure to establish jurisdiction); *United States v. James,* 987 F.2d 648 (9th Cir.1993) (reversing conviction under 18 U.S.C. § 2113(a) for failure of proof that the money in the armed robbery was taken from a bank insured by the FDIC); *United States v. Shively,* 715 F.2d 260 (7th Cir.1983), (reversing § 1014 convictions for lack of evidence of insured status of bank), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984); *see also Knop,* 701 F.2d at 673 (threatening to reverse conviction if federally insured status of bank is not proven, but finding in this case sufficient indirect evidence to affirm conviction).

### CONCLUSION

The government's failure to allege or to prove that the bank was federally protected was "crucial to the establishment of federal jurisdiction and to proving an essential element of the offense," *see Knop,* 701 F.2d at 674. Accordingly, the judgment of the district court is reversed and the case is remanded with instructions that the district court grant a judgment of acquittal.

The court expresses its thanks to the amicus for having accepted the appointment and for having rendered such a helpful service to the court. The government is likewise to be commended for its forthright response to the submission of the amicus.

REVERSED AND REMANDED WITH DIRECTIONS.

---

**6.** In *Knop,* our court found that the jury drew the reasonable inference from the evidence that the banks were federally insured at the time of commission of the offense. 701 F.2d at 673. Judge Posner, dissenting, stated that he would reverse because the government failed to prove the bank's federally insured status beyond a reasonable doubt. *Id.* at 676–77.