THOMPSON, Circuit Judge,
dissenting.
I am happy to join my colleagues’ opinion except as to Section II.A. I cannot agree with their characterization of the evidence offered to show that BPPR was insured by the FDIC when Ayewoh defrauded BPPR — a central element of the conviction. The record, containing only a seven-year-old FDIC certificate and its authenticating testimony, is too flimsy to support the interpretation that the majority constructs upon it. Where, as here, the government has failed to prove every element of the crime of which the defendant was charged beyond a reasonable doubt, his conviction cannot stand.
For more than thirty years now, prosecutors have been on notice that they must be as diligent in proving the FDIC insurance element of crimes like bank fraud as they are in proving any other element. In 1980, the Fifth Circuit expressed “difficulty comprehending why the [g]overnment repeatedly fails to prove this element more carefully since [its] burden is so simple and straightforward,” and warned the government that it “treads perilously close to reversal.” United States v. Maner, 611 F.2d 107, 112 (5th Cir.1980). With increasing exasperation, our sister circuits have since continuously issued warnings to the government, imploring it to take this requirement more seriously.[9] Eventually, they began reversing convictions where the government’s measly evidentiary proffer could not have persuaded a jury beyond a reasonable doubt that the financial institution at issue was FDIC-insured as of the offense date.[10]
Though the line between sufficiency and insufficiency is by no means bright, its broad contours are readily discernible. On one side is a single FDIC certificate predating the offense, which our sister circuits have uniformly rejected as insufficient. Maj. Op. at 918-19 (collecting cases). On the other side is the testimony of a bank employee to the effect that the bank is *928 insured at the time of the trial, which is usually adequate. Maj. Op. at 918-19 (collecting cases). The central question, then, is this: did the government introduce enough evidence in this case to push the proof of insurance across that line? It is here that I depart from my colleagues’ analysis.
The majority parses the evidence of insurance into two separate pieces: the FDIC certificate and the testimony of BPPR’s record-keeper. The certificate itself, as in Shively and Platenburg, was issued about seven years before Ayewoh’s fraud. Because a jury cannot reasonably conclude, without something more, that the bank’s insurance status has remained in force throughout the intervening years, see Shively, 715 F.2d at 265, the certificate is insufficient. That leaves the record-keeper’s testimony, which the majority insists provides enough proof of insurance that, when combined with the certificate, it pushes the quantum of evidence across the line.
As my colleagues recognize, the jury’s verdict must be “supported by a plausible rendition of the record,” United States v. Wilder, 526 F.3d 1, 8 (1st Cir.2008) (internal quotations omitted), and although “the jury is entitled to choose among varying interpretations of the evidence[,] ... the interpretation it chooses [must be] a reasonable one,” United States v. Martinez, 922 F.2d 914, 923 (1st Cir.1991). The fact-finder does not have unfettered discretion to rely on any conceivable interpretation of the evidence. True, appellate courts must “view the facts in the light most favorable to the [government,” United States v. Neal, 36 F.3d 1190, 1203 (1st Cir.1994), but the touchstones are plausibility and reasonableness.
Here is the entirety of the record-keeper’s testimony:
Q: I would like to show you government’s identification number 1. Let the record reflect that it has been shown to the defendant!.]
Q: Without discussing the substance, do you recognize that document?
A: Yes, I do.
Q: What do you recognize that to be? A: This is the Federal Deposit Insurance Corporation certificate issued to Banco Popular [de] Puerto Rico on January 1999.
Q: How do you know it is the same one at Banco Popular?
A: My initials are on the back.
[Q:] Your Honor, we ask that government’s exhibit 1 be admitted into evidence.
The majority asserts that this exchange is amenable to multiple reasonable interpretations, including one that relates to BPPR’s insurance status at the time of trial. Maj. Op. at 919-20. I disagree. Rather, the record-keeper’s testimony merely authenticated the paper she was shown as the 1999 certificate. Once the government succeeded in entering the certificate into the record, it elicited no further testimony explaining the significance of the certificate.[11] The testimonial con *929 text reinforces that this is the only plausible interpretation. The record-keeper gave the key statement relied upon by the majority after being asked to identify the document “[without discussing [its] substance .... ” Moreover, immediately after the key statement, the government asked how she knew the document before her was the same one on file at BPPR, and she responded, “My initials are on the back.” The colloquy thus dealt only with the witness’s personal knowledge of the physical certificate and explicitly stopped short of discussing its content, legal effect, or— most importantly — continuing validity.
The majority disagrees, suggesting that the key passage in the colloquy above could be interpreted by a rational juror to mean, “This is the [current FDIC] certificate [which was] issued to [BPPR] on January 1999.” Maj. Op. at 919 (alterations in original). But this interpretation imports meaning that the testimony itself does not support: the word “current” cannot be inferred from or found anywhere in either the statement or its testimonial context. Indeed, the statement conveys no information other than that the certificate is authentic and was issued in 1999.[12]
The majority also discusses the relative infrequency with which FDIC certificates are revoked. Maj. Op. at 918. While this information, in concert with other evidence, might buttress a jury’s conclusion that a certificate remains valid, it is irrelevant here because it is nowhere in the record. When considering sufficiency claims, we consider only the evidence available to the factfinder, cf. United States v. DeCologero, 530 F.3d 36, 65 (1st Cir.2008), because it is ultimately the jury that must find the defendant guilty beyond a reasonable doubt, not a reviewing court. Of course, juries may rely upon their common sense and upon any fact in common knowledge in reaching a verdict. See, e.g., Maroules v. Jumbo, Inc., 452 F.3d 639, 644-45 (7th Cir.2006). But because the jury in this case was not made aware of the procedural and statistical details relating to the revocation of FDIC certificates, they should not inform our consideration of the sufficiency the government’s proof. Unlike the majority’s reasonable suggestion that “[i]t is common knowledge that cardholders may generally disavow unauthorized charges on their credit card statements,” Maj. Op. at 922, for example, it is hardly common knowledge that FDIC certificates are rarely revoked. Since we cannot assume that the intricacies of FDIC insurance are widely known, we cannot say that there was sufficient evidence to support the proposition that BPPR was insured when Ayewoh carried out his schemes.
The government’s failure to prove an indispensable element of the charged offense appears against a backdrop of both decades of warnings urging it to be more careful and notice after trial of the possibility of reversal.[13] In situations such as *930 these, as Judge Posner explained, “either the government proved every element of the offense beyond a reasonable doubt or it did not. If it did not, we must reverse; if it did, it is no business of ours that it could have put on an even stronger case.” Knop, 701 F.2d at 677 (Posner, J., dissenting). Here, the government’s deliberate oversight compels the reversal of Ayewoh’s conviction and sentence.
I do not come to this conclusion lightly. Ayewoh admits to intending to defraud innocent credit card owners. He stole more than one hundred thousand dollars, some tens of thousands of which were either never recovered by BPPR or borne unreported by the victimized cardholders. Nevertheless, we should not allow the centuries-old proposition that all elements of a crime must be proven beyond a reasonable doubt, see In re Winship, 897 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), to be eroded slowly for expediency’s sake.
I respectfully dissent.

. See, e.g., United States v. Rusan, 460 F.3d 989, 994-95 (8th Cir.2006); United States v. Bindley, 157 F.3d 1235, 1239 & n. 3 (10th Cir.1998); United States v. Slovacek, 867 F.2d 842, 846 (5th Cir.1989); United States v. Sliker, 751 F.2d 477, 484 (2d Cir.1984); United States v. Knop, 701 F.2d 670, 674 (7th Cir.1983); id. at 676-77 (Posner, J., dissenting).

. See, e.g., United States v. Sandles, 469 F.3d 508, 512-17 (6th Cir.2006); United States v. Ali, 266 F.3d 1242, 1243-45 (9th Cir.2001); United States v. Dennis, 237 F.3d 1295, 1303-05 (11th Cir.2001); United States v. Lindsay, 184 F.3d 1138, 1142 (10th Cir.1999); United States v. Shively, 715 F.2d 260, 265, 269 (7th Cir.1983) (Posner, J.); United States v. Platenburg, 657 F.2d 797, 799-800 (5th Cir.1981).

. Moreover, contrary to the majority’s implication, Maj. Op. at 917-18, Ayewoh did not have any reason to "object to admission of the certificate or to the record custodian's testimony” or to "cross examine the witness.” An objection to evidence that was clearly foundational and properly framed would have been unnecessary if not inappropriate. And Ayewoh had no duty to cross-examine the record-keeper, especially when the exercise could only have assisted the prosecution. Instead, counsel properly adhered to cross-examination expert Irving Younger’s well-regarded advice by leaving insufficient testimony alone — not asking one question too many— and holding the prosecution to its burden of proof.

. While no analogy is perfect, the following might serve to illuminate this point. Imagine that a prosecutor, pointing to a defendant, asked a witness, "Without saying anything substantive about him, do you recognize that man?” If the witness responded, “Yes I do, that is John Doe,” it would be unreasonable for a jury (or a court) to interpret that statement as "Yes I do, that is [murderer] John Doe.” Adding a single word can make a world of difference.

. Both Ayewoh and the district court alerted the government to the infirmity of the evidence it adduced to prove the insurance element. When Ayewoh filed his motion for acquittal, he pointed out the numerous exhortations from the courts of appeals not to treat cavalierly the necessity of providing such proof. At that point, had the government simply moved to reopen the case and provided any one of a myriad of other pieces of evidence to substantiate its claim, Ayewoh’s *930 conviction would be unassailable. See United States v. Mojica-Baez, 229 F.3d 292, 299-300 (1st Cir.2000) (approving that practice). For example, the government could have asked the record-keeper whether she had searched for any documents that superseded or rescinded the certificate. See Neal, 36 F.3d at 1207 n. 22. It could have called BPPR’s manager to ask whether the company was insured. See United States v. Vachon, 869 F.2d 653, 657 (1st Cir.1989). It could even have introduced into evidence “the cancelled check for the [insurance premium for the] period of time covering” the offense. Maner, 611 F.2d at 112 n. 2. Instead, it stubbornly insisted on the sufficiency of the paltry evidence it had already produced.