**UNITED STATES of America, Appellee,**

v.

**Richard E. SCHERMERHORN,
Defendant–Appellant.**

**No. 1220, Docket 90–1035.**

United States Court of Appeals,
Second Circuit.

Argued May 16, 1990.
Decided June 25, 1990.

James J. Moriarty, New York City (William Farrell, of counsel), for defendant-appellant.

Howard M. Shapiro, New York City, Asst. U.S. Atty. S.D. New York (Otto G. Obermaier, U.S. Atty. S.D. New York, Joan McPhee, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, Chief Judge, PIERCE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Richard E. Schermerhorn appeals his conviction, following a jury trial, of income tax evasion, 26 U.S.C. § 7201, obstruction of justice, 18 U.S.C. § 1503, and submitting a false statement to a bank, 18 U.S.C. §§ 1014 and 2. The jury found Schermerhorn not guilty of mail fraud, 18 U.S.C. § 1341, and bank fraud, 18 U.S.C. § 1344. Because the jury found Schermerhorn guilty of income tax evasion, the district court dismissed, on the government's motion, the lesser-included offense of subscribing to a false tax return. Schermerhorn was sentenced to consecutive terms of imprisonment of twelve months for the income tax evasion and six months for obstruction of justice. The district court suspended sentence on the conviction of submitting a false statement to a bank, and placed Schermerhorn on probation for a period of two years.

Schermerhorn raises three issues on appeal. First, he contends that the district court erred when it denied his pretrial motion to dismiss the mail fraud counts. While the jury ultimately acquitted Schermerhorn of these counts, he maintains that their presence in the case allowed the introduction of what was, as to the other counts, irrelevant but prejudicial evidence. Second, he claims that his false statement conviction should be dismissed because there was insufficient evidence to prove that the bank was insured by the FDIC. Third, Schermerhorn claims that all of his convictions should be dismissed for insufficient evidence. We reject each of these contentions and affirm the convictions.

## BACKGROUND

### A. *The State Investigation and the Alleged Mail Fraud.*

In 1983 the New York State Organized Crime Task Force began an investigation of then New York State Senator Richard E. Schermerhorn, based on allegations received from Dominic Lofaro, an informant who was a former member of the Gambino organized crime family. Together with an investigator from the task force, Anthony Procino, Lofaro posed as a member of organized crime who hoped to obtain state construction contracts. Procino and Lofaro met with Schermerhorn on three separate occasions and gave him a total of $5,000 in cash.

After his re-election in November of 1984, Schermerhorn was pressed by Procino about the state construction contracts. At this point Schermerhorn offered to return the money, claiming that he believed that it had been a campaign contribution. Nevertheless, Schermerhorn neither returned the money, nor did he ever declare receiving it on the financial disclosure forms that his staff mailed to the New York State Board of Elections. This evidence formed the basis for the mail fraud counts on which Schermerhorn was acquitted.

### B. *The Tax Counts.*

In 1985 Schermerhorn discussed selling his half of a Super 8 Motel franchise in Cromwell, Connecticut, to his partner, Steven Gorss. The two men agreed that Gorss would purchase Schermerhorn's share in the motel corporation in exchange for $200,000 in cash, the forgiveness of Schermerhorn's outstanding loan from the corporation, and the corporation's assumption of Schermerhorn's second mortgage on his home. A few days later, Schermerhorn and Gorss met to finalize the agreement. They signed corporate minutes that explained Schermerhorn's redemption of stock and his resignation as a director of the corporation, and Schermerhorn formally executed his resignation as a director, effective immediately. Gorss then gave Schermerhorn his personal check for $50,-000.

Schermerhorn's failure to report to the IRS the $50,000 payment, the forgiveness of his loan from the corporation, and the corporation's assumption of his mortgage payments constituted the basis for the tax evasion and false tax return convictions.

### C. *The False Bank Loan Application.*

In March of 1986, well after selling his motel interest to Gorss, Schermerhorn applied to Barclay's Bank for a loan. On a financial statement that he filed in conjunction with this loan, Schermerhorn was required to list his assets. Schermerhorn included in this list the Super 8 Motel, which accounted for $800,000 of his listed total assets of $823,133. Schermerhorn's senior administrative assistant, Cheryl Barton, who was helping him complete the form and who knew about the prior sale of his interest in the motel, questioned him about his listing the motel as an asset, but Schermerhorn told her to "just put it in." The bank granted Schermerhorn the loan, but he later defaulted, and it was paid by the guarantor.

### D. *Obstruction of Justice.*

In August of 1987, the FBI informed Schermerhorn that he was a target of a federal grand jury investigation. In September Schermerhorn attempted to convince Steven Gorss to alter the papers regarding the motel transaction. Specifically, he wanted the papers to indicate that the $50,000 he had received from Gorss was a loan and not a downpayment. At that point, Gorss began cooperating with the FBI, and he met with Schermerhorn three times while wearing a concealed tape recorder. At each of these meetings, Schermerhorn attempted to convince Gorss to alter the documents so that the sale would appear as a loan. He also wanted Gorss to change the date of the transaction from November of 1985 to April of 1986 so that his income tax liability would be deferred.

Schermerhorn also told Cheryl Barton, who was to be interviewed by IRS agents,

that if she were asked about the motel transaction, she should tell the agents that the transaction was a loan, not a sale, and that the attorney had made a mistake in the papers. Unable to convince Gorss to alter the documents, Schermerhorn in 1987 filed an amended 1985 tax return in which he admitted an additional $20,000 tax liability.

## DISCUSSION

### A. *The Mail Fraud Counts.*

Schermerhorn claims that from the beginning the indictment's mail fraud counts were factually insufficient. He argues that the trial court's refusal to dismiss these counts prior to trial permitted the introduction of otherwise inadmissible evidence, harmful to Schermerhorn. He maintains that this evidence, particularly the tapes of his meetings with people whom he believed were members of organized crime, substantially prejudiced the jury against him. The government counters by asserting that if Schermerhorn believed he would be unfairly prejudiced by the mail fraud counts, he should have objected to the joinder of the mail fraud counts with the other charges and moved for a severance under rule 14 of the Federal Rules of Criminal Procedure.

■ Because the mail fraud indictment stated a claim under the mail fraud statute as interpreted in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), it was not an abuse of discretion for the district court to deny Schermerhorn's pretrial motion requesting that these counts be dismissed. At the end of the government's case, Schermerhorn made a rule 29 motion, which was denied. He never objected to the joinder of the counts; instead, he single-mindedly attempted to have the mail fraud counts dismissed.

■ After the verdict, the district court judge told the jury that had Schermerhorn been found guilty on the mail fraud counts, he would have dismissed these counts as a matter of law. This comment does not mean, as Schermerhorn seems to believe, that he is entitled to a reversal on the other counts. Regardless of what the district judge gratuitously said, Schermerhorn's pretrial motion to dismiss the mail fraud counts had been properly denied and the evidence of which he now complains, although perhaps insufficient to prove his guilt, was properly introduced by the government. If prior to or during the trial Schermerhorn had been concerned with the prejudicial impact of this evidence on the other counts, he should have requested a severance. Having failed to do this in the district court, he cannot succeed on appeal with his belated claim of prejudicial joinder. *See* F.R.Cr.P. 12(f); *United States v. Beltempo,* 675 F.2d 472, 481 (2d Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982).

### B. *The False Statement Count.*

■ Schermerhorn was also convicted of making a false statement to a federally insured bank. To convict on this count, the government was obligated to prove that the bank was insured by the FDIC at the time the false statement was made. 18 U.S.C. § 1014 (1976). The only evidence of FDIC insurance that the government offered on this point, if read narrowly and literally, indicated that the bank was insured at the time of trial. Peter Dumas, a vice-president of Barclay's Bank and, at the time of Schermerhorn's loan application, the loan administrator who reviewed his application, testified that Barclay's deposits "are" insured by FDIC. There was no explicit testimony that the bank was insured at the time Schermerhorn made his false statement.

In claiming that Dumas' statement was insufficient proof, Schermerhorn points to *United States v. Sliker,* 751 F.2d 477 (2d Cir.1984), *cert denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832, 471 U.S. 1137, 105 S.Ct. 2679, 86 L.Ed.2d 697 (1985). *Sliker* and the present case are factually similar: in both cases, while the government had established insurance as of the time of trial, it had failed to elicit testimony that the bank in question was insured at the time of the crime. In his opinion, Judge Friendly castigated the prosecutor

for failing "to ask the simple question that would avoid the need for judicial consideration of what should be a non-problem * * *." *Sliker*, 751 F.2d at 484. We emphatically reiterate his reproach.

But in *Sliker* we did not hold that the failure to elicit this information was fatal to the government's case. On the contrary, we held that where "the evidence is oral testimony that the bank is insured, and the interval between the crime and the trial is not too great, it is reasonable to conclude that 'viewed in context, the jury could draw the inference that the bank was insured at the time * * *.'" *Sliker*, 751 F.2d at 484–85 (citation omitted). Schermerhorn argues that because the time between his bank application and trial was roughly four or five months longer than the time interval in *Sliker*, Dumas' testimony was inadequate to prove that the bank was insured at the time of Schermerhorn's application. We do not agree.

*Sliker* did not establish a temporal boundary for cases of this type. The case holds that "when the time span is not too great and there is no suggestion of an intervening circumstance that might call its previous existence into question" testimony such as Dumas', although far from perfect, is acceptable. *Sliker*, 751 F.2d at 484. The four or five month difference in time between the circumstances in *Sliker* and here is not significant in the context of this case. The context of Dumas' testimony—in particular his involvement with Schermerhorn's loan application—indicates, in the absence of any contrary evidence, that the circumstances at trial were the same as those existing when Schermerhorn filed his loan application; thus, the jury could reasonably infer that the bank was insured at the time Schermerhorn applied for a loan.

### C. *Sufficiency of Evidence.*

Schermerhorn asks us to dismiss all of his convictions because he claims that there was insufficient evidence of each of the crimes. This argument is without merit. Schermerhorn seems to believe that because he can offer alternative explanations for his actions, he is entitled to a reversal.

As the district judge stated, however, that there was "an abundance of evidence to support the convictions." Schermerhorn fails to offer any basis that would require us to find that the jury and the district judge were incorrect in their conclusions. Accordingly, Schermerhorn has not met the "very heavy burden" he bears in challenging the sufficiency of the evidence. *United States v. Rivalta*, 892 F.2d 223, 227 (2d Cir.1989).

### CONCLUSION

We affirm Schermerhorn's convictions in all respects.