**UNITED STATES of America, Appellee,**

v.

**Ikemefula NNANYERERUGO, Appellant.**

**No. 93–3154.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 7, 1994.

Decided Nov. 15, 1994.

---

1206

Allen E. Burns, Asst. Federal Public Defender, Washington, DC, argued the cause for appellant. With him on the briefs was A.J. Kramer, Federal Public Defender, Washington, DC.

Miriam Smolen, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Eileen F. Sheehan, Asst. U.S. Attys., Washington, DC.

Before: WALD, SILBERMAN, and HENDERSON, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellant Ikemefula Nnanyererugo challenges his conviction for bank fraud under 18 U.S.C. § 1344 (1988), asserting insufficiency of the evidence and prejudice to his right to a fair trial arising from remarks made by the prosecutor during closing arguments. We affirm.

## I.

On July 3, 1991, appellant used a false identification card in the name of David Peterson to cash at a First American Bank branch a stolen and forged check for $2300 made payable to David Peterson, drawn on Charlynn Robison's First American account. The jury found that appellant's action was part of a scheme to defraud First American. His codefendant at trial, Obinna Charles Enwereuzo, was convicted of making a fraudulent deposit of two checks totalling $6100 to the Robison account on July 1, 1991.

■ In reviewing appellant's challenges to the sufficiency of the evidence against him, we consider " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Washington,* 12 F.3d 1128, 1135–36 (D.C.Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 98, 130 L.Ed.2d —— (1994). No distinction is made on review between direct and circumstantial evidence. *United States v. Teffera,* 985 F.2d 1082, 1085 (D.C.Cir.1993).

The government primarily relied at trial on two pieces of evidence establishing appellant's participation in the fraudulent check cashing on July 3, 1991. First, the forged check was stamped by a validation machine at a teller window at 10:32 a.m. Photographs taken by video cameras at the same branch that day show that appellant was present at a teller window at 10:36:29 a.m. and was last photographed there at 10:43:15 a.m. Second, the forged check was cashed using the Peterson identification card: the card's "soundex" number and expiration date appeared on the face of the check. The government demonstrated that appellant's address as of August 1991, 6841 Riverdale Road in Riverdale, Maryland, was next door to David Peterson's mother's home at 6842 Riverdale Road, which, Peterson testified, was where he would have received mail at the time. From this evidence, the government claims that the jury could infer that appellant had the opportunity to obtain materials related to Mr. Peterson that would enable appellant or someone acting with him to secure the Maryland identification card in Peterson's name.

■ Appellant argues that the approximately four-minute interval between the time the check was validated and the time printed on the photographs placing him at the scene fatally weakens the government's case. The evidence presented by the government to explain the time discrepancy, however, in conjunction with the other evidence against him, provided a legitimate basis for the jury to conclude that appellant cashed the check. The bank's Vice President and Security Officer, William Stoneman, testified that the bank's videotaping system and validation stamp mechanism ran from separate power sources, and that the absence of a branch number from the photographs taken that day indicated that the taping system had been turned off or otherwise temporarily disabled sometime between the time it was installed and the date in question. It was therefore possible—and within the province of the jury to conclude—that the approximately four-minute difference in the validation and photograph times occurred because the tape system was out of sync with the validation machine, perhaps because of reprogramming after a power loss (the validation machine is supported by backup generators and would not have lost power).[1] Similarly, Stoneman's

---

1. We are not persuaded by appellant's assertion that a power outage to the video cameras would only explain a time discrepancy if the photographs showed earlier times than the validation stamp. Stoneman testified that after a power outage, the system would have to be reprogrammed; thus, depending on what clock the reprogrammer used in resetting the time, the video camera's time might match the validation stamp, or be faster or slower.

testimony that a teller would typically stamp a check at the end of a transaction did not preclude the jury from finding that appellant cashed the check, both because the machines might have been out of sync and because there was no evidence that standard procedures were followed when the check in question was cashed. Finally, appellant's presence at the teller window for approximately seven minutes was consistent with Stoneman's testimony that cashing a $2300 check would take several minutes at least. This evidence, coupled with the use of the Peterson identification card to cash the check, was sufficient to permit the jury to convict.

■ We are also unpersuaded by appellant's challenge to the government's evidence showing a relationship between himself and Mr. Enwereuzo, from which the jury could conclude that appellant participated in a "scheme to defraud" the bank under 18 U.S.C. § 1344. The evidence showed a close similarity between the address Mr. Enwereuzo gave his employer, Silver Spring Towers, and the address on the Peterson identification card used to cash the fraudulent check.[2] More significantly, the jury found that Mr. Enwereuzo had deposited forged checks into the Robison account on July 1, 1991—the same account from which appellant made the fraudulent withdrawal on July 3, 1991. The evidence against Mr. Enwereuzo included his access to mail delivered to his employer, Silver Spring Towers, which provided the opportunity for him to steal one of the checks used in the fraudulent July 1 deposit, and his presence in the bank within moments of the time the checks were deposited on July 1. From these facts, the jury could conclude that Mr. Enwereuzo and appellant cooperated in a scheme to defraud the bank by fraudulently inflating and then depleting the Robison account.

## II.

■ Appellant next argues that the government did not prove an essential element

of the offense—that the First American Bank was, at the time the fraud took place, a financial institution insured by the FDIC within the meaning of 18 U.S.C. § 1344, 18 U.S.C. § 20(1), and 12 U.S.C. § 1813(c)(2). Mr. Stoneman testified that the bank "is" currently FDIC insured. The prosecutor did not ask Stoneman the crucial question as to the bank's past insured status at trial. This court has not previously considered the degree of proof necessary to establish insured status under § 1344, but like the Second and Fifth Circuits, we are bemused to discover that the Justice Department "still has not effectively instructed prosecutors to ask the simple question that would avoid the need for judicial consideration of what should be a non-problem.…" *United States v. Sliker*, 751 F.2d 477, 484 (2d Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985); *see United States v. Maner*, 611 F.2d 107, 111–12 (5th Cir.1980). Nevertheless, we agree (reluctantly, because we hate to sanction carelessness) with our sister circuits that the government may rely on testimony of present insured status as evidence of its prior existence, "at least where the time span is not too great and there is no suggestion of an intervening circumstance that might call its previous existence into question." *Sliker*, 751 F.2d at 484; *see United States v. Schermerhorn*, 906 F.2d 66, 70 (2d Cir.1990) (conviction sustained based on testimony that bank "is" FDIC insured); *United States v. Knop*, 701 F.2d 670, 672–73 (7th Cir.1983) (same).

■ We also reject appellant's claim that Stoneman was not a competent witness on the subject of the bank's insured status because he lacked personal knowledge. Appellant did not raise the issue squarely below, and "[a] defendant is normally deemed to have waived any legal objections not actually articulated at trial." *United States v. Johnson*, 802 F.2d 1459, 1465 (D.C.Cir.1986) (citation omitted). While we think it a close

2. As the government concedes, the district court incorrectly stated in its memorandum denying appellant's motion for a judgment of acquittal that the address on the Peterson identification card was "nearly identical to the address Mr. Nnanyereruzo used in his dealings with Silver Spring Towers." *United States v. Nnanyererugo*, Crim. Nos. 91–707–01–02, Mem. Op. at 3 (D.D.C.

May 28, 1993). This error was harmless, however, because the address on the card had been shown at trial to be substantially similar to the address Mr. Enwereuzo gave his employer, Silver Spring Towers, and thus could be relied on by the jury as showing a link between the defendants.

question, we conclude that appellant's contemporaneous hearsay objection at trial was insufficient to constitute an objection based on the witness' personal knowledge. These objections are denominated separately in the Federal Rules of Evidence, *see* FED.R.EVID. 602 (personal knowledge); FED.R.EVID. 801 *et seq.* (hearsay). As appellant acknowledges in his reply brief, the objection was "wide of the mark." We do not think that every hearsay objection in these circumstances logically implies an objection based on lack of personal knowledge, where the separate ground was not stated at the time and where no comment was made after the judge overruled the objection.

▪ Appellant's waiver of the personal knowledge objection below permits reversal on appeal only in "extraordinary circumstances 'affect[ing] substantial rights and result[ing] in a miscarriage of justice.'" *United States v. Thomas,* 896 F.2d 589, 591 (D.C.Cir.1990) (citations omitted). No such circumstances are present here. Testimony describing Stoneman's qualifications and position at the bank, and the fact that his testimony was uncontradicted, gave the jury sufficient basis to credit his statement that the bank was FDIC insured. *See Sliker,* 751 F.2d at 483 (testimony of bank vice president and controller suffices to prove insured status); *Schermerhorn,* 906 F.2d at 69–70 (testimony of bank vice president and loan administrator sufficient for proof of insurance); *United States v. Campbell,* 616 F.2d 1151, 1153 (9th Cir.), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980) (uncontradicted testimony of two bank employees that bank was insured sufficient to show insured status). We also conclude that Stoneman's testimony was sufficiently close in time (two years) to the date the crime took place to justify a jury inference that the bank was previously insured. *See Sliker,* 751 F.2d at 484 (unspecified length of time (at most 3 years) was "not too great"); *Schermerhorn,* 906 F.2d at 70 ("*Sliker* did not establish a temporal boundary for cases of this type.").

▪ Appellant's assertion that First American Bank's connection with the Bank of Credit and Commerce International (BCCI) undermines the presumption that proof of the bank's present FDIC insured status evidences past insured status, is unpersuasive.

Appellant offered no evidence whatsoever at trial or in his briefs to this court to support his assertion on appeal that supposed "irregularities" at the bank relating to BCCI actually affected its insured status. Appellant's unsubstantiated claims are insufficient without more to overcome the presumption that proof of past insured status could be inferred from evidence of present insured status, and this argument is therefore of no consequence to our decision here.

▪ Finally, we reject appellant's claim that he was denied a fair trial by the prosecutor's statements in closing arguments relating to Mr. Peterson's receipt of mail and Mr. Enwereuzo's address. Because no objection was raised to the remarks at trial, we reverse only for plain error. *United States v. Olano,* — U.S. —, — – —, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993) (citations omitted); *United States v. Clarke,* 24 F.3d 257, 266 (D.C.Cir.1994). We think that the prosecutor did not assert facts that had not been proven when she stated that Mr. Peterson "was receiving mail," in light of his uncontradicted testimony that, "if I would have gotten mail, it would have went to my mother's address." Appellant never claimed that no mail was delivered to that address or that Peterson did not expect to receive any. Similarly, we do not think that the prosecutor's statements constituted improper "vouching" for her witness, as her remarks in rebuttal responded directly to appellant's arguments about Peterson's credibility—indeed, her remarks made clear that the jury was to make a determination about Peterson's credibility themselves. Thus, the minor differences between the prosecutor's statements and Mr. Peterson's testimony fail to rise to the level of "plain error" required for reversal here.

We therefore affirm appellant's conviction.

*So ordered.*