# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3862

_____

United States of America,    *
             *
    Appellee,     *
             *
  v.         * Appeal from the United States
             * District Court for the District
David Reynaldo Lewis,    * of South Dakota.
             *
    Appellant.    *

_____

Submitted: May 18, 2001

Filed: August 10, 2001

_____

Before MORRIS SHEPPARD ARNOLD and BYE, Circuit Judges, and GAITAN,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

David Reynaldo Lewis was convicted of defrauding the Norwest Bank of Sioux Falls, South Dakota, *see* 18 U.S.C. § 1344. On appeal, he raises only one significant issue, namely, whether the evidence was sufficient to establish beyond a reasonable doubt that Norwest Bank was insured by the FDIC at the time the fraud was committed. We believe that the evidence was sufficient and therefore affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

In the present case, the manager of the Norwest branch office at which the fraud occurred, when asked whether the bank "is" insured by the FDIC, answered in the affirmative. The case is therefore identical in every relevant respect to *United States v. Hadamek*, 28 F.3d 827, 827-28 (8th Cir. 1994), in which a bank's president testified that his deposits "are" insured by the FDIC. We held that this testimony was "sufficient to allow the jury to infer that the bank was FDIC insured on the date of the fraud." In doing so, we cited with approval *United States v. Schermerhorn*, 906 F.2d 66, 69-70 (2d Cir. 1990), where the court observed that testimony that funds in a bank "are" insured "viewed in the context" would allow a jury to "draw the inference that the bank was insured" at the relevant time. The inference in the present case draws strength from the fact that the interval between the commission of the fraud and the trial of this case was not great.

While it would manifestly have made out a better case if the witness's testimony had related more directly to the time when the fraud was committed, we have opined in a case very similar to the present one that the "existence of [a] fact is some indication of its probable existence at an earlier time." *United States v. Mitchell*, 136 F.3d 1192, 1193 (8th Cir. 1998). Such testimony, moreover, would be irrelevant unless it is understood to be evidence of a status that extended into the past, and a reasonable factfinder would be justified in assuming that a witness would not be testifying to an extraneous fact. While the present tense has, it is true, an instantaneous aspect, it also can describe a status. The sentence "I am a man" carries with it an inference that I always was one.

Because we believe that Mr. Lewis's argument is foreclosed by precedents that are directly apposite, we affirm the conviction.

BYE, Circuit Judge, dissenting.

I respectfully dissent.  A defendant may be convicted under the federal bank fraud statute upon proof that he defrauded a federally-insured financial institution by scheme or artifice.  <u>See</u> 18 U.S.C. § 1344; 18 U.S.C. § 20(1).  Proof of federal insurance is an essential element of the offense.  Despite the government's obvious failure to introduce sufficient evidence of that element, however, the majority affirms David Lewis's bank fraud conviction.

In February 1999, Lewis deposited four forged checks into his account with the Norwest branch in Sioux Falls.  Lewis later withdrew cash based on his deposits.  He was indicted on a single charge of bank fraud in November 1999, and tried in late May 2000, some fifteen months after he perpetrated the fraud.

At trial, the government presented a single piece of evidence to prove that the branch was FDIC-insured in February 1999.  On direct examination, branch manager Adeline Reiman was asked, "The Norwest Bank there, is that institution insured by the Federal Deposit Insurance Corporation?"  She responded, "Yes."  The government presented no proof that Reiman worked at the branch in February 1999, nor that Reiman had any basis for knowing that the branch was FDIC-insured at that time.  The jury also learned that Reiman had not been the branch manager in February 1999.  Yet Reiman's one-word, present-tense response constitutes the sole proof that the Norwest branch was federally insured in February 1999.

In prior cases, we have occasionally indulged a temporal inference that what is the case today was the case yesterday, thereby permitting proof of *present* FDIC-insured status to serve as proof of *past* FDIC-insured status.  But our willingness to rely on this temporal inference has been strictly confined to cases that involve two circumstances: proximity between the trial testimony and the offense, and the

declarant's continued employment at the bank between those times.  Neither consideration permits us to apply the temporal inference in this case.

As to time, fifteen months elapsed between Lewis's check-cashing episodes and his federal trial.  The few cases in which we inferred FDIC-insured status at the time of the offense from proof of FDIC-insured status at the time of trial involved significantly shorter periods of time.  See, e.g., United States v. Mitchell, 136 F.3d 1192, 1193 (8th Cir. 1998) (seven months); United States v. Carlisle, 118 F.3d 1271, 1274 (8th Cir. 1997) (four months).

As to continued employment, we only grant the government the benefit of the temporal inference with respect to testimony by bank officers employed both at the time the criminal acts occurred and at the time of trial.  See, e.g., United States v. Hadamek, 28 F.3d 827, 827-28 (8th Cir. 1994); United States v. Schermerhorn, 906 F.2d 66, 69-70 (2d Cir. 1990) (cited approvingly in Hadamek).  Yet in the present case, the government introduced no evidence that Reiman was employed by Norwest Bank in February 1999, or that Reiman had any reason to know whether the branch had been FDIC-insured at that time.

By applying the temporal inference without acknowledging our precedential limitations of time and continued employment, the majority further eviscerates the FDIC-insured element.  The dual considerations of time and continued employment tether the temporal inference to common sense and evidentiary principles.  Absent proximity in time and the testimony of a bank employee present during the fraud, we lack confidence that present-tense testimony reliably indicates past federal insurance.

I reject the majority's point that we *must* apply the temporal inference to preserve the relevance of Reiman's testimony.  Reiman's testimony was relevant when offered because the government would (everyone assumed) subsequently introduce other reliable evidence of the branch's FDIC-insured status to buttress Reiman's

-4-

present-tense testimony. Reiman's answer simply laid the foundation for the next questions: were you employed at the branch in February 1999, and, was the branch FDIC-insured at that time? Unfortunately, the government never pursued these obvious follow-up questions, and thus it failed to present sufficient evidence of an element of the crime. That the government utterly failed to prove federal insurance does not force us to apply the temporal inference simply to avoid the conclusion that Reiman's testimony was irrelevant. By so concluding, the majority catapults the evidentiary cart before the substantive horse.

Finally, I cannot permit the majority's misleading analogy, <u>ante</u> at 2 ("I am a man"), to pass without comment. The majority argues that present-tense testimony conveys the sense of status, and that Reiman's testimony should be so interpreted. Status is not immutable, however, so the majority's argument simply begs a further temporal question. While the phrase "I am a man" suggests that the speaker has always been a man, the phrase does not suggest the *length* of time that the speaker has possessed that status. A four-year old who exclaims, "I am a man," was not a man five years earlier. Hence Reiman's testimony that the Norwest branch was FDIC-insured in May 2000 provides no assurance that the branch was FDIC-insured when Lewis defrauded the bank in February 1999.

After this case, district judges may nearly take judicial notice of FDIC-insured status, for the government need not prove much more under our evaporating standard. The government may present virtually any current bank employee to opine that the bank is presently insured. The majority's new rule will then complete the constitutional heavy lifting by permitting the jury to infer that the bank *was* FDIC-insured at the time of the offense.

Perversely, our willingness to ignore obvious deficiencies in the government's proof accompanies the government's growing disinterest in proving the federal insurance element. Numerous cases in this circuit and other circuits demonstrate the

government's nearly perpetual difficulties in establishing the straightforward FDIC-insured element.  See, e.g., United States v. Schultz, 17 F.3d 723, 727-28 (5th Cir. 1994) (collecting cases).  The government's proof of federal insurance here—which the district court generously characterized as "skinny proof"—was plainly insufficient to permit a jury to find Lewis guilty of bank fraud under § 1344.

I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.