# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4446

_____

United States of America,           *
                                   *

        Appellee,         *
                                   *      Appeal from the United States

   v.                     *      District Court for the
                                   *      Eastern District of Missouri.

Ricardo Rusan,            *
                                   *           [PUBLISHED]

        Appellant.       *

_____

Submitted: May 16, 2006
Filed: August 22, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

Ricardo Rusan appeals his convictions for bank robbery and bank larceny pursuant to 18 U.S.C. § 2113(a), (b), contending that the district court[1] erred in denying his Batson[2] challenge to the Government's use of peremptory strikes during jury selection and that there was insufficient evidence to establish that the bank

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]Batson v. Kentucky, 476 U.S. 79 (1986).

involved was insured by the Federal Deposit Insurance Corporation (FDIC). After careful review, we affirm.

## I.

During the morning hours of November 12, 2004, a man wearing a skull cap and sunglasses and carrying a backpack entered a branch of the Southern Commercial Bank in St. Louis. Upon entering the bank the man approached one of the teller windows and inquired about opening an account. He was directed to the customer service desk and walked away, but then immediately returned and again approached the window of teller Dianne Sanborn. When he returned to Ms. Sanborn's window, he put the backpack on the counter and told her to start filling it with cash. As he spoke to Ms. Sanborn, the man kept his hand in his pocket, pointing it at Ms. Sanborn's chest. After she filled the backpack with over two thousand dollars in cash and a dye pack, the man picked up the backpack and walked out of the bank. While this was occurring, the bank alarm was activated by another bank employee. The police arrived shortly after the man left. Witnesses reported seeing the man walking down the street carrying a backpack from which red smoke was billowing, but the man could not be identified.

No suspects were arrested in the time immediately after the robbery, and the police began trying to discern images from the bank security cameras to develop leads. In early January 2005, the police received a tip from an employee of the Missouri Department of Corrections who recognized Rusan after seeing images from the security camera tapes and who identified Rusan as the person who committed the November 2004 bank robbery. After police received this information, they put out notice that Rusan was wanted for questioning regarding the bank robbery.

A few days later, the police took Rusan into custody on a different matter, and then also questioned him about the robbery. Rusan initially denied any involvement

in the November 2004 robbery and offered an alibi. However, after being told by police of the mounting evidence pointing toward him as the perpetrator, Rusan recanted his alibi and confessed to robbing the bank. That same day, Ms. Sanborn identified Rusan in a multi-person lineup as the man who had approached her teller window and robbed the bank on November 12.

A grand jury returned a one-count indictment, charging Rusan with bank robbery. Rusan pleaded not guilty, and the case proceeded to trial. The day trial began, Rusan waived indictment, and one count of bank larceny was added in order to allow Rusan to argue for the lesser charge of bank larceny instead of bank robbery. The district court overruled Rusan's <u>Batson</u> objection to the Government's use of its peremptory strikes to remove three African-American venirepersons during the jury selection process.

After a two-day trial, Rusan was convicted by a jury on both counts. The district court sentenced Rusan to 240 months of imprisonment on the bank robbery count and 120 months of imprisonment on the bank larceny count, with the sentences to run concurrently. Rusan filed this timely appeal, challenging his convictions on two grounds: (1) that the district court violated the separation of powers doctrine during its ruling on the <u>Batson</u> challenge, and (2) that the evidence at trial was insufficient to establish that the Southern Commercial Bank branch was federally insured.

II.

**A. <u>Batson</u> Challenge**

At the start of trial there was a panel of 39 potential jurors, six of whom were African-American. The Government removed four African-American venirepersons in total, striking one for cause and using three of its six peremptory challenges against the others. Rusan also struck one African-American venireperson, leaving one on the panel. After the Government exercised its three peremptory challenges against

African-Americans, Rusan made a Batson objection, claiming the strikes were improperly motivated by race. The Government responded, first challenging whether Rusan had even made a prima facie showing of discrimination by the mere fact that it had used three peremptory strikes against African-Americans and then articulating several nondiscriminatory reasons for the strikes.

Rusan did not challenge the adequacy or factual correctness of the nondiscriminatory explanations offered by the Government except to argue that they were a pretext for discrimination because the Government had failed to strike Juror Two, who Rusan maintained was a similarly situated white venireperson. Rather than requiring the Government to respond to this assertion of pretext, the district court relied upon the explanations already offered by the Government to note that Juror Two was not similar in all legitimate factors to the three African-Americans struck by the Government. (See Trial Tr. at 122-23). The district court then concluded that the Government's nondiscriminatory reasons for exercising its peremptory strikes were adequate and overruled Rusan's Batson objection.

On appeal, Rusan argues that a separation of powers concern arises from the district court's Batson analysis, but because he did not raise this argument before the district court, we review only for plain error. See United States v. Mohr, 407 F.3d 898, 901 (8th Cir.) (applying plain error review to constitutional arguments not previously raised), cert. denied, 126 S. Ct. 670 (2005). We have discretion to reverse for plain error if there is "an error that is plain," "that affects substantial rights," and that "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal marks omitted).

There are three steps in a Batson analysis: (1) the district court must determine whether the challenger has made a prima facie showing that the peremptory strikes were based upon race; (2) if the court so finds, then the exercising party must provide

its reasons for dismissing the potential jurors; and (3) the district court must then determine if the challenger has satisfied the burden of proving purposeful discrimination. United States v. Thompson, 450 F.3d 840, 844 (8th Cir. 2006). See also Batson, 476 U.S. at 96-98. In this case, the district court did not discuss the first step of whether Rusan had established a prima facie case, but went on to require the Government to offer race-neutral reasons for the exercise of each peremptory strike of an African-American venireperson. Rusan then attempted to show pretext by stating that the Government did not strike a similarly situated white juror. The district court then overruled the objection.

As we understand Rusan's argument on appeal, he complains that the district court violated the separation of powers doctrine by, in effect, shouldering the Government's burden of providing nondiscriminatory reasons when the court did not require the Government to respond to his assertion of pretext. We see no error, let alone plain error. The district court did not create its own race-neutral reasons to satisfy the Government's burden. The Government had provided race-neutral reasons before Rusan asserted that Juror Two was similarly situated. Because the district court could determine from the voir dire proceeding it had conducted and the race-neutral reasons already articulated by the Government that Juror Two was in fact not similarly situated, there was no need for it to delay its ruling to allow further rebuttal argument by the Government as to pretext. The district court did not err by relying on the record already made, which demonstrated that Rusan had not met his burden of proving purposeful discrimination. Rusan's claim of pretext was apparently so meritless based on the record already made before her that the district judge had no need to hear further argument from the Government. No separation of powers concerns arise from the district court's disposition of the Batson challenge.

**B. Sufficiency of the Evidence**

Rusan further argues that there was insufficient evidence to prove that Southern Commercial Bank was federally insured at the time of the robbery. "We review

challenges to the sufficiency of the evidence de novo, viewing the facts in the light most favorable to the verdict, resolving any evidentiary conflicts in favor of the prosecution, and accepting all reasonable inferences that support the verdict." United States v. Osuna-Zepeda, 416 F.3d 838, 841-42 (8th Cir. 2005), cert. denied, 126 S. Ct. 1653 (2006). The verdict will be upheld if "a reasonable jury could have found [Rusan] guilty beyond a reasonable doubt." Id. at 842.

"Bank robbery [and larceny are] federal crime[s] only if the institution robbed is a federally chartered financial institution or is insured by a federal deposit insurer." United States v. Davis, 406 F.3d 505, 511 (8th Cir. 2005), cert. denied, 126 S. Ct. 1083 (2006); see also 18 U.S.C. § 2113(f) (defining the term "bank"). The Government relied on the fact that Southern Commercial Bank was insured by the FDIC to satisfy the statutory requirements of 18 U.S.C. § 2113(f) and presented evidence of the bank's insured status during its case-in-chief.

The Government offered a photocopy of a plaque on display at the bank that notifies customers the bank is insured by the FDIC, and the testimony of Marcia Ellerbeck, an employee of Southern Commercial Bank for over 31 years. The photocopy of the plaque that was entered into evidence depicted the plaque displayed in the bank on the day of the robbery. Ms. Ellerbeck testified that the bank was insured on the day of the robbery and that her knowledge of that status came through information disseminated from the bank. She also testified that part of her work responsibilities included explaining the concept of FDIC insurance to new bank customers. Rusan contends that this evidence is insufficient, based upon our prior caselaw, to establish that the bank was FDIC insured. We respectfully disagree.

We first question whether we even need to look at the merits of this claim. While Rusan now contends that there was insufficient evidence presented by the Government to prove the bank was FDIC insured, at trial Rusan's counsel conceded that the Government had met its burden on this element. During closing arguments,

Rusan's counsel argued that the Government had failed to prove beyond a reasonable doubt all the elements of bank robbery. (Trial Tr. at 243.) His counsel then went on to state that "[a]s to bank larceny, . . . I would concede that the government has proved those elements." (Id.) Because one element of both crimes is the bank's federally insured status, by conceding that the Government satisfied the elements of bank larceny, Rusan's counsel conceded that the Government had sufficiently proven that the bank was FDIC insured as to both counts. While statements made by counsel during closing arguments are not evidence, United States v. Lowrimore, 923 F.2d 590, 593 (8th Cir.), cert. denied, 500 U.S. 919 (1991), concessions made by counsel as part of a trial strategy are another matter, see generally Lingar v. Bowersox, 176 F.3d 453, 459 (8th Cir. 1999) (recognizing that trial counsel's decision to concede lesser charge in closing argument as part of trial strategy was not ineffective assistance), cert. denied, 529 U.S. 1039 (2000). See also United States v. Bentson, 947 F.2d 1353, 1356 (9th Cir. 1991) (holding that defendant was bound by attorney's judicial admission during closing arguments), cert. denied, 504 U.S. 958 (1992); Rodriguez-Gonzalez v. INS, 640 F.2d 1139, 1141-42 (9th Cir. 1981) (stating that attorney's admission to an element of the offense, done in presence of defendant, was binding); United States v. Adams, 422 F.2d 515, 518 (10th Cir.) (holding that defendants were bound by admissions made by counsel during trial when made in defendant's presence and with permission of defendant), cert. denied, 399 U.S. 913 (1970). Because this issue can be simply dealt with on its merits we will do so, while acknowledging that Rusan appears to have conceded this issue at trial.

We have not previously articulated a minimum standard of proof of insured status in the prior cases that addressed this issue, but the evidence before us may well be approaching what we would consider the bare minimum. We have stated that a copy of the insurance certificate issued by the FDIC, proof of payment of the insurance premium, and the testimony of a bank officer (or other knowledgeable employee) that the bank's deposits are insured is sufficient to prove that the bank was insured by the FDIC. See United States v. Mitchell, 136 F.3d 1192, 1193 (8th Cir.

1998); United States v. Merrill, 484 F.2d 168, 169-70 (8th Cir.), cert. denied, 414 U.S. 1077 (1973). While producing the actual certificate and proof of payment may be the ideal evidence to prove insured status, we have upheld many cases on testimony alone. See United States v. Lewis, 260 F.3d 855, 855-56 (8th Cir. 2001) (holding insured status proven by statement of bank manager that deposits are insured by the FDIC), cert. denied, 534 U.S. 1154 (2002); United States v. Hadamek, 28 F.3d 827, 827-28 (8th Cir. 1994) (stating that testimony from bank president that deposits are insured was sufficient to allow jury to draw inference that bank was also insured at time of robbery); United States v. Mays, 822 F.2d 793, 796 (8th Cir. 1987) (holding that testimony of bank manager that bank was insured was enough to satisfy requirement and noting that testimony of bank manager on this matter should receive the same evidentiary weight as that of a bank officer).

The photocopy of the plaque itself is likely not enough to establish Southern Commercial's insured status, but when admitted in conjunction with the testimony of Ms. Ellerbeck, an employee (as opposed to a manager or officer) of the bank for over 30 years, it is enough to satisfy us that a jury could have reasonably found that the bank was insured on the day of the robbery. Ms. Ellerbeck was asked at trial if through her work she was "familiar with whether or not the deposits of that bank [were] insured by the federal government." (Trial Tr. at 176.) Ms. Ellerbeck replied that the deposits were insured and always had been while she had worked there. (Id.) Not only did she know this through her work in customer service, but she also knew of the insured status through training and information she received from her superiors. Ms. Ellerbeck then identified a photocopy of the plaque as one that hangs in the bank to notify customers that the bank is FDIC insured. Rusan objected to the admission of the photocopy of the plaque under the best evidence rule, and the district court, treating the objection as going to the fact that a photocopy and not the original plaque was being used, overruled Rusan's objection. At no time did Rusan make any further objections or contend that the court had misconstrued his original objection.

The issue of proof of insured status arises more frequently than it should.  As we stated in <u>Hadamek</u>, "we are at a loss to understand why the government did not introduce more specific evidence regarding the bank's insured status on the date of the offense, including a copy of the certificate of insurance."  28 F.3d at 828.  While the evidence in this instance was sufficient for the jury to find that the bank was insured by the FDIC, we respectfully suggest again that the certificate of insurance in effect at the time of the offense, accompanied by proof of the premium payment for the same period offered through the testimony of a knowledgeable official from the bank, would more specifically (and easily) satisfy this element of the offense without being overly burdensome on the Government.

### III.

Accordingly, we affirm the judgment of the district court.

_____