**UNITED STATES of America,**
**Plaintiff,**

v.

**Jerome Daniel FOOTE, Defendant.**

**Criminal Action No. 00–20091–01–KHV.**

United States District Court,
D. Kansas.

Dec. 13, 2002.

Scott C. Rask, Office of United States Attorney, Kansas City, KS, for U.S.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

On August 14, 2002, a jury found defendant guilty on 15 counts of trafficking in counterfeit goods, one count of conspiracy to traffic in counterfeit goods, six counts of money laundering and one count of engaging in a monetary transaction in property derived from unlawful activity. This matter is before the Court on Jerome Daniel Foote's oral motion for judgment of acquittal at the close of the evidence. At trial, the Court reserved ruling on defendant's motion. Both parties have filed briefs on the motion. For reasons set forth below, the Court sustains defendant's motion in part.

### Standards For Motions For Judgment Of Acquittal

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed.R.Crim.P., the Court cannot weigh the evidence or consider the credibility of witnesses. See *Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir.1982). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the government. See *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Acquittal is proper only if the evidence implicating defendant is nonexis-

tent or is "so meager that no reasonable jury could find guilt beyond a reasonable doubt." *White*, 673 F.2d at 301; see *United States v. Brown*, 995 F.2d 1493, 1502 (10th Cir.) (evidence supporting the conviction "must be substantial and must not raise a mere suspicion of guilt") (citation omitted), cert. denied, 510 U.S. 935, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993), overruled on other grounds by *United States v. Prentiss*, 256 F.3d 971 (10th Cir.2001).

## Factual Background

The evidence at trial may be summarized as follows:

On December 1, 1997, FBI Special Agent Albert Pisterzi received a mailing from "Replicas," which advertised high quality reproductions of sunglasses, watches, handbags and apparel. On December 6, 1997, Pisterzi went to Replicas and observed that Foote was selling the advertised merchandise from his residence in Lenexa, Kansas. Pisterzi observed that original garment tags had been removed and replaced by various trademark tags. He also observed that handbags purportedly manufactured in Europe displayed "Made in China" tags.

On February 6, 1998, Richard Smith, a consultant with The Guidry Group in Dallas, Texas, went to Replicas, where Foote greeted him. Smith inspected the merchandise which Foote offered for sale, including watches, jewelry, handbags,

sunglasses and clothing apparel. Smith concluded that the items were counterfeit.

In August or September 1998, Foote relocated Replicas from his residence to a strip mall at 7922 Quivira in Lenexa, Kansas. On November 22, 1998, Smith and FBI Special Agents Stanley Wright and Melissa Osborne went to Replicas. They observed that the merchandise was similar to the merchandise which Foote had previously offered at his residence. On their visit, the agents purchased $466.00 in merchandise.[1]

On December 7, 1998, while agents were executing a search warrant for Replicas, Cynthia Gibson, an employee of Replicas, arrived in her personal vehicle.[2] Gibson told agents that she had Foote's merchandise in her car and she agreed to allow them to search the car. In Gibson's car, agents found trademark apparel, merchandise, labels and tags.

On June 21, 2000, a grand jury returned an indictment which charged Foote with three counts of trafficking in goods bearing counterfeit marks in violation of 18 U.S.C. § 2320. See Sealed Indictment (Doc. # 1). On May 24, 2001, a grand jury returned a superseding indictment which charged Foote and Smith with conspiracy to traffic in goods bearing counterfeit marks, and also charged Foote with one count of money laundering in violation of

---

1. The merchandise purchased included 23 items: a man's Rolex, a Mont Blanc pen, a DKNY purse, a Fendi purse, a Polo Ralph Lauren purse, a Coach handbag, a Dooney & Bourke handbag, a Dooney & Bourke cigarette purse, a Louie Vuitton wallet, a Nike t-shirt, a Tommy Hilfiger sweatshirt, a pair of Tommy Hilfiger jeans, a FUBU sweatshirt, a Nike baseball cap, a Nautica sweatshirt, a Nike pullover shirt, a Nike hooded sweatshirt, an Adidas sweatshirt, a Guess sweatshirt, a Polo sweatshirt, a Fila t-shirt, a Mickey sweatshirt and a Tommy Girl sweatshirt.

2. On August 2, 2002, the Court suppressed (1) all evidence seized pursuant to the search warrant for Replicas including Foote's statements on December 7, 1998; (2) all evidence seized pursuant to the search warrant for the cargo trailers behind Replicas; (3) the testimony of Elizabeth Martindale, an employee at Replicas; and (4) Foote's statement on May 30, 2001. See Memorandum And Order (Doc. # 113). The Court, however, overruled defendant's motion to suppress evidence seized from Gibson's car, as fruit of the unlawful search of Replicas. See *id.* at 15.

18 U.S.C. § 1956, one count of engaging in a monetary transaction in property derived from an unlawful activity in violation of 18 U.S.C. § 1957, and three counts of trafficking in goods bearing counterfeit marks. See Sealed Superseding Indictment (Doc. # 3).

On December 13, 2001, a grand jury returned a second superseding indictment which charged Foote and Smith with conspiracy to traffic in goods bearing counterfeit marks, and also charged Foote with six counts of money laundering, one count of engaging in a monetary transaction in property derived from an unlawful activity, and 37 counts of trafficking in goods bearing counterfeit marks. See Second Superseding Indictment (Doc. # 34). On May 1, 2002, a grand jury returned a third superseding indictment which charged Foote and Smith with conspiracy to traffic in goods bearing counterfeit marks, and also charged Foote with four counts of money laundering, one count of engaging in a monetary transaction in property derived from an unlawful activity, and 38 counts of trafficking in goods bearing counterfeit marks. See Third Superseding Indictment (Doc. # 74).[3]

From August 6 through 14, 2002, defendant was tried on one count of conspiracy to traffic in counterfeit goods, 15 counts of trafficking in counterfeit goods, six counts of money laundering and one count of engaging in a monetary transaction in property derived from unlawful activity. The counts of trafficking involved the following products and trademarks:

| Count | Product Offered By Defendant | Date Product Obtained From Defendant | Trademark Owner | Date Trademarks First Used In Commerce On Class Of Goods [4] |
|---|---|---|---|---|
| 6 | Nautica Sweat-shirt | 11–22–98 | Nautica Apparel, Inc. | 1985 |
| 7 | Guess Sweatshirt | 11–22–98 | Guess?, Inc. | 1986 |
| 8 | Nike Shirts | 11–22–98 | Nike, Inc. | 1971 |
| 9 | Rolex Watch | 11–22–98 | Rolex Watch U.S.A., Inc. | 1943 |
| 10 | Mont Blanc Pen | 11–22–98 | MontBlanc–Simplo GMBH | 1913 |

**3.** Based on the Court's ruling on defendant's motion to suppress, see supra note 2, the Court dismissed 20 counts against defendant for trafficking in counterfeit goods. See Order (Doc. # 117) filed August 5, 2002.

**4.** The dates in this column are identified on the certified trademark registrations which the Court admitted at trial as Exhibits 58 through 80. Some of the products which defendant sold had multiple trademarks on them. In such cases, this column lists the date on which the most recently registered trademark on the product was first used in commerce. Because the government must establish that the registered mark was in use at the time of defendant's trafficking, see infra, and because the Court must view the evidence in the light most favorable to the government, the relevant date is the date when the most recently registered trademark on the product which defendant sold was first used. For example, Count 19 charges that defendant trafficked in Polo sweatshirts which contained three trademarks: a polo player, the phrase "Polo Sport" and the name "Ralph Lauren." Ralph Lauren first used its trademarks for "Ralph Lauren," for a polo player and for "Polo Sport" in 1967, 1972 and 1993, respectively. Accordingly, this column lists only the date when Ralph Lauren first used "Polo Sport" (1993) because it most strongly supports the inference that the trademark was still in use when defendant trafficked in 1998.

| 12 | Dooney & Bourke Day Planner | 12–06–98 | Dooney & Bourke, Inc. | 1983 |
|----|-----------------------------|----------|-----------------------|------|
| 13 | Dooney & Bourke Hand-bags | 12–07–98 | Dooney & Bourke, Inc. | 1983 |
| 14 | Nike T-shirts | 12–07–98 | Nike, Inc. | 1971 |
| 15 | Nike Sweatshirts | 12–07–98 | Nike, Inc. | 1971 |
| 16 | Adidas T-shirts | 12–07–98 | Adidas–Salomon AG | 1990 |
| 17 | FILA Sweat-shirts | 12–07–98 | Fila Nederland B.V. | 1979 |
| 18 | Tommy Hilfiger Sweatshirts | 12–07–98 | Tommy Hilfiger, Inc. | 1985 |
| 19 | Polo Sweatshirts | 12–07–98 | Polo Ralph Lauren, L.P. | 1993 |
| 20 | Calvin Klein T-shirts | 12–07–98 | Calvin Klein Trade-mark Trust | 1994 |
| 21 | DKNY Purses | 12–07–98 | Gabrielle Studio, Inc. c/o The Donna Karen Company | 1989 |
| 22 | DKNY T-shirts | 12–07–98 | Gabrielle Studio, Inc. c/o The Donna Karen Company | 1989 |

At trial, based on poor quality of workmanship and material, removal of original neck tags and replacement with counterfeit trademark tags which were not properly sewn into shirts and sweatshirts, low stitch count on apparel, missing tags, absence of labels or warranty cards that would ordinarily accompany trademark merchandise, and low prices of the merchandise offered for sale, several witnesses testified that the products which Foote sold were not authentic.[5]

Each witness compared the product which defendant sold in November and December of 1998 to an authentic product obtained from the manufacturer in July and August of 2002.

Except for Count 12, the jury found defendant guilty on all counts—15 counts of trafficking in counterfeit goods, one count of conspiracy to traffic in counterfeit goods, six counts of money laundering and one count of engaging in a monetary transaction in property derived from unlawful activity. Defendant argues that he is entitled to judgment of acquittal on the 15 counts of trafficking in counterfeit goods because (1) the claims are barred by the statute of limitations and (2) the government did not prove that the genuine trademarks were in use at the time of defendant's conduct in 1998.

## Analysis

### I. Statute Of Limitations

The jury found defendant guilty on 15 counts of violating 18 U.S.C. § 2320. Each of these counts involved conduct that occurred on or before December 7, 1998. Defendant argues that he is entitled to judgment as a matter of law because the government filed its charges after the applicable statute of limitations.

---

**5.** These witnesses included Richard Smith (consultant), David Simpson (Nike), Kathy Swart (Guess Jeans), Steven Kirby (private investigator), Joyce Workman (Mont Blanc), Leah Caras (Donna Karen New York), Joseph Kadash (private investigator) and Jeffrey Stalnaker (Adidas America).

Defendant was convicted under 18 U.S.C. § 2320, which does not contain an express statute of limitations. Ordinarily, where a criminal statute does not provide a specific statute of limitations, courts refer to the federal criminal catchall provision, which provides:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282. Defendant argues that the catchall provision does not apply because Section 2320 specifically incorporates the statute of limitations used in civil Lanham Act action. Title 18, Section 2320(c) provides:

All defenses, affirmative defenses, and limitations on remedies that would be applicable in an action under the Lanham Act shall be applicable in a prosecution under this section. In a prosecution under this section, the defendant shall have the burden of proof, by a preponderance of the evidence, of any such affirmative defense.

Neither the statute nor the legislative history specifies whether the reference to "[a]ll defenses, affirmative defenses, and limitations on remedies" includes the statute of limitations used in Lanham Act cases. The Lanham Act does not contain an express statute of limitations and courts generally apply the limitations period for the most analogous state law cause of action. See *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 206 (3d Cir.2002); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d

789, 796 (4th Cir.2001). Absent a uniform statute of limitations in Lanham Act cases, Congress probably did not intend that Section 2320(c) incorporate the statute of limitations used in such cases. Because no statute of limitations is expressly provided by Section 2320(c) or the Lanham Act, the Court applies the five year limitations period provided in 18 U.S.C. § 3282.

Defendant maintains that Congress clearly intended the specific provisions of Section 2320(c) to trump the catchall statute of Section 3282. Defendant's argument is premised on a single law review article. See Ronald J. Nessim, Criminal (And Civil) Trademark Infringement: What Statute Of Limitations Applies?, 76 J. Pat. & Trademark Off. Society 933 (December 1994). At least one federal district court has specifically rejected defendant's argument. See *United States v. HLC Elec. Supply Co., Inc. & Hector Luis Contreras*, No. CR 92–412 (C.D.Cal.), cited in Nessim, n. 2.[6] In addition, the United States District Court for the Eastern District of New York has noted that although the Lanham Act, 15 U.S.C. § 1115, governs a criminal defendant's assertion of a laches defense, the timeliness of a prosecution under 18 U.S.C. § 2320 is determined by the five year statute of limitations.[7]

See *United States v. Milstein*, No. CR96–899, 2000 WL 516784, at *1 (E.D.N.Y. Mar. 3, 2000). The Court also finds persuasive the following analysis:

Congress provided for no express statute of limitations when it enacted section 2320. Nor is there any need for an

---

**6.** Ronald J. Nessim, who authored the law review article, was defense counsel in the HLC case and prepared the article after the United States District Court for the Central District of California rejected his argument.

**7.** In Milstein, the court did not specify the statutory basis for a five year statute of limitations, but it apparently had in mind the federal catchall provision, 18 U.S.C. § 3282.

express alternative to section 3282. Section 2320 itself defines the offense without reference to the Lanham Act, in contrast to other statutes that reference underlying prohibitions outside of Title 18 and are therefore subjected to the statute of limitations of those underlying offenses. For example, because the elements of a criminal copyright violation are contained in 17 U.S.C. § 506 and only the penalty provisions are set out in Title 18, criminal copyright was previously subject to a three-year statute of limitations under 17 U.S.C. § 507(a).

Congress provided for the use of Lanham Act defenses when it enacted section 2320. Even if Congress intended to use section 2320(c) to incorporate defenses beyond, for example, those provided at 15 U.S.C. § 1115(b), the fact remains that Congress has never provided a statute of limitations for Lanham Act claims. Thus, there is no express statute of limitations alternative to section 3282 for a prosecution under section 2320.

Finally, if courts adopted [the] approach of borrowing "analogous" state law in a typical multistate trademark counterfeiting case, they would be forced to engage in a number of ill-founded, irrelevant and complex inquiries: Which state's law should this federal court borrow? Which among its causes of actions should be chosen as "most analogous"? Which statute of limitations applies for that cause of action? When should the statute begin to run? Is the state statute of limitations running, or the federal statute running, and should the period be measured by state or federal principles?

The answers to these difficult questions could lead to markedly different results depending on which state and which laws of a particular state are chosen. This complicated process would undermine uniformity in the federal criminal law. It can be safely assumed, without any indication to the contrary in the statute or the legislative history, that Congress did not intend to create a crazy-quilt of criminal trademark infringement law. Nor did Congress intend to unduly burden federal judges with unnecessary and abstruse legal inquiries in the context of a criminal case. An interpretation of federal criminal law that would create such variations in its application would subvert the principle of certainty, would encourage forum shopping by federal prosecutors, and could potentially lead to unnecessarily bifurcated cases. Federal courts should therefore adhere to the express formulation of the criminal limitations period mandated by 18 U.S.C. § 3282 and reject the invitation to look beyond it.

David J. Goldstone & Peter J. Toren, The Criminalization Of Trademark Counterfeiting, 31 Conn. L.Rev. 1, 69–70 (Fall 1998). For these reasons, the Court applies the five year statute of limitations in 18 U.S.C. § 3282. Because defendant's trafficking of counterfeit goods occurred within five years of the indictment, the Court overrules defendant's motion for judgment of acquittal on this issue.

## II. "Use" Of Trademark At Time Of Defendant' Trafficking

■ Defendant argues that he is entitled to judgment of acquittal because the government did not offer evidence that the genuine trademarks were in use *at the time of his conduct.* The government maintains that Section 2320 does not require it to establish that the trademark holder was using a trademark on the date of the offense. See Consolidated Response (Doc. # 152) at 5. This position belies the fact that the government did not object to jury instructions which required such proof. Moreover, the law clearly holds that to sustain a conviction under 18 U.S.C. § 2320, the government must prove beyond a reasonable doubt that "the regis-

tered mark was in use at the time of the trafficking." Instructions To The Jury (Doc. # 124) filed August 14, 2002 at 46; see also *United States v. Guerra*, 293 F.3d 1279, 1290 (11th Cir.2002) (genuine mark must actually be "in use"; evidence undisputed that marks were in use "at the time of the counterfeiting conspiracy"), reh'g en banc denied, 48 Fed. Appx. 744 (11th Cir. Aug.29, 2002); *United States v. Giles*, 213 F.3d 1247, 1251 (10th Cir.2000) (actual use required); 18 U.S.C. § 2320(e)(1)(A)(ii) (mark must be "identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and *in use*") (emphasis added).[8]

Accordingly, the Court must determine whether the government produced sufficient evidence to show beyond a reasonable doubt that the registered marks were in use at the time of defendant's conduct in 1998.

■ The government first argues that based on the certified copies of the trademark registrations, the jury could infer that the marks were in use in 1998. The Court disagrees. To register a trademark on the principal register, an individual must show either the use or "bona fide intent[ ] to use" the mark in interstate or foreign commerce. 15 U.S.C. § 1051(a),

(b). Because intent to use a trademark suffices for registration, the jury could not infer from the sole fact of registration that a trademark was in use at the time of defendant's conduct. See *Guerra*, 293 F.3d at 1290 (district court erred by instructing jury that trademark registration is prima facie evidence of owner's continued use of mark).

The government next maintains that the overall testimony of the company witnesses "enabled the jury to reasonably infer that the particular trademarks about which they were testifying were 'in use.' " Consolidated Response (Doc. # 152) at 6. In particular, the government notes that the Court admitted as evidence certified copies of trademark registrations, which showed that the trademarks had been registered before defendant sold the products. See id. at 6–7. As noted above, however, the trademark registration does not establish actual use because intent to use a trademark suffices for registration.[9]

■ The government also cites evidence that at the time of trial, particular trademarks were in use on particular products. The additional fact that a trademark was in use at the time of trial in August of 2002, however, would not allow a reasonable jury to conclude beyond a reasonable doubt that the owner was using the mark in 1998.[10]

8. Common sense also requires some temporal limitation on the phrase "in use" under Section 2320. To otherwise interpret the statute would allow a prosecution for trafficking in products with trademarks that the trademark owner did not begin to use until trial.

9. Also, the registrations identified specific dates (ranging from 1913 through 1994) that each company first used the marks in commerce. They were insufficient by themselves to show that each company was still using the trademarks in 1998. See *Guerra*, 293 F.3d at 1290 (district court erred by instructing jury that trademark registration is prima facie evidence of owner's continued use of mark).

10. Ironically, on the charges for money laundering and engaging in a monetary transaction in property derived from an unlawful activity, government counsel specifically established that the banks at issue were insured by the FDIC *at the time of defendant's transaction.* As to Citizens National Bank, counsel asked if the bank was insured for the entire time that the witness had worked there (February 1998 through May 1999) and if the FDIC certificate would have been posted on November 23, 1998—the date of the offense charged in Count 11. See Testimony of Shannon Smith. As to UMB Bank, counsel asked if the bank had remained insured with the FDIC from when the witness began work-

See *United States v. Ali*, 266 F.3d 1242, 1244–45 (9th Cir.2001) (evidence that bank was federally insured in 1985 and 1999 insufficient to prove that bank was insured in 1997, at time of offense); *United States v. Allen*, 88 F.3d 765, 768–69 (9th Cir.1996) (present tense answers do not support inference that credit union was insured more than four years earlier), cert. denied, 520 U.S. 1202, 117 S.Ct. 1565, 137 L.Ed.2d 711 (1997); *United States v. Darrell*, 828 F.2d 644, 648 (10th Cir.1987) (certificate of insurance alone does not adequately establish that financial institution is FDIC-insured on date charged offense occurred); *United States v. Chin*, 910 F.Supp. 889, 894–95 (E.D.N.Y.1995) (present tense answers insufficient to show that five years ago and earlier, ammunition was not manufactured within New York). But cf. *United States v. Miller*, 71 F.Supp.2d 1113, 1116 (D.Kan.1999) (present tense testimony sufficient to show that bank was federally insured ten months earlier). Except for one count discussed below, such a conclusion would be pure speculation based on the record evidence.[11]

See Instructions To the Jury (Doc. # 124) at 29 (defendant cannot be convicted on mere suspicion or conjecture).

■ As to Count 10, which involved Mont Blanc pens, the government presented sufficient evidence to establish that the trademarked white star emblem was in use at the time of defendant's trafficking in November of 1998. Joyce Workman, who has worked in the Mont Blanc customer service department for 26 years and has been vice president of customer service for the last five years, testified that Mont Blanc has manufactured or produced writing instruments for a long time and the trademarked star emblem appears on every single Mont Blanc product that the company produces. Moreover, the certified trademark registrations stated that Mont Blanc first used the star emblem on writing instruments in 1913. Based on this evidence, the jury properly found beyond a reasonable doubt that the authentic Mont Blanc trademark was in use on writing instruments in November of 1998.

For these reasons, the Court sustains defendant's motion for judgment of acquittal on Counts 6 through 9 and 13 through 22. The Court overrules defendant's motion as to Count 10.

### III. Remaining Convictions Against Defendant

■ As explained above, the jury also found defendant guilty of conspiracy to traffic in counterfeit goods, engaging in a monetary transaction in property derived from unlawful activity and six counts of money laundering. The Court's ruling as to the counts of trafficking in counterfeit goods does not impact the jury's finding that defendant conspired with Brandon Smith and others to traffic in counterfeit goods. See Instructions To The Jury (Doc. # 124) at 33 (elements of conspiracy). Indeed, the crime of conspiracy to traffic and attempt to traffic in counterfeit goods may be established even if 18 U.S.C. § 2320 was not actually violated. See *id.* The money laundering counts

---

ing there in 1997 through trial in August of 2002. See Testimony of Lisa Taverner. Similar temporal questions would have satisfied the government's burden on the counterfeit trafficking charges.

11. The Court recognizes that based on their own experience, some jurors may have known that one or more of the trademarks were in use in November and December of 1998. The government did not present such evidence at trial, however, and of course, it cannot rely on the probable experience of jurors to establish an essential element of its case. See Instructions To the Jury (Doc. # 124) at 30 (law permits nothing but legal evidence presented before jury to be considered in support of any charge against accused).

(Counts 2 through 5, 23 and 24) charge that on October 6, November 10 and 24, 1997, April 21, November 22, and December 23, 1998 and June 5, 2000, defendant deposited and exchanged money, which involved the proceeds of trafficking and attempting to traffic counterfeit goods, knowing that the transactions were designed to conceal and disguise, the nature, location, source, ownership and control of the proceeds. The count for engaging in a monetary transaction in property derived from unlawful activity (Count 11) charges that on November 23, 1998, defendant engaged in a monetary transaction by and through Citizen's National Bank in criminally derived property of $12,700. The parties have not addressed whether based solely on defendant's conviction of conspiracy to traffic in counterfeit goods and a single count of trafficking in counterfeit goods, defendant's convictions on Counts 2 through 5, 11, 23 and 24 can stand. Accordingly, on or before **December 31, 2002,** the government shall show cause in writing why the Court should not sustain defendant's motion for judgment of acquittal as to Counts 2 through 5, 11, 23 and 24. On or before **January 15, 2002,** defendant may file an opposition brief.

IT IS **THEREFORE ORDERED** that Jerome Daniel Foote's oral motion for judgment of acquittal be and hereby is **SUSTAINED in part.** The Court sustains defendant's motion as to Counts 6 through 9 and 13 through 22. The Court overrules defendant's motion as to Counts 1 and 10.

IT IS **FURTHER ORDERED** that on or before **December 31, 2002,** the government shall show cause in writing why the Court should not sustain defendant's motion for judgment of acquittal as to Counts 2 through 5, 11, 23 and 24. On or before **January 15, 2002,** defendant may file an opposition brief.

IT IS **FURTHER ORDERED** that the sentencing of Jerome Daniel Foote sched-uled for January 3, 2002 is continued pending further order of the Court.